1   **CLARKSON LAW FIRM, P.C.**           **CLARKSON LAW FIRM, P.C.**
2   Glenn A. Danas (SBN 270317)           Kristen G. Simplicio (SBN 263291)
    *gdanas@clarksonlawfirm.com*           *ksimplicio@clarksonlawfirm.com*
3   Maxim Gorbunov (SBN 343128)           1050 Connecticut Avenue NW, Suite 500
    *mgorbunov@clarksonlawfirm.com*        Washington, DC 20036
4   22525 Pacific Coast Highway           Telephone: (202) 998-2299
    Malibu, CA 90265
5   Telephone: (213) 788-4050
    Facsimile: (213) 788-4070
6
    *Attorneys for Plaintiff and Putative Class*
7
                          **UNITED STATES DISTRICT COURT**
8
                         **NORTHERN DISTRICT OF CALIFORNIA**
9
    JENNIFER CARRERA, individually and on        Case No.: 4:25-cv-09629-YGR
10  behalf of all others similarly situated,
                                                 **SECOND AMENDED CLASS ACTION,**
11                         Plaintiff,            **PAGA, AND COLLECTIVE ACTION**
                                                 **COMPLAINT**
12          v.
                                                 1.  Failure to Pay Minimum Wage and
13  PRUVIT VENTURES INC.; BRIAN                      Liquidated Damages (Cal. Lab. Code §§
    UNDERWOOD; CHRISTOPHER HARDING;                  1182.12, 1194, 1197, 1197.1, 1198; IWC
14  TERRY LACORE; JENIFER GRACE; BLAKE               Wage Order 4-2001);
    MALLEN; and DOES 1–50, inclusive,            2.  Failure to Pay Overtime Wages and
15                                                   Liquidated Damages (Cal. Lab. Code § 510;
                           Defendants.               IWC Wage Order 4-2001);
16                                               3.  Failure to Provide Rest Periods or Rest Break
                                                     Premium Wages (Cal. Lab. Code §§ 226.7,
17                                                   558.1);
                                                 4.  Failure to Provide Meal Periods or Meal
18                                                   Premium Wages (Cal. Lab. Code §§ 226.7,
                                                     512(a), 1198; IWC Wage Order 4-2001);
19                                               5.  Failure to Timely Pay Wages During
                                                     Employment (Cal. Lab. Code § 204);
20                                               6.  Failure to Timely Pay Wages Upon
                                                     Separation (Cal. Lab. Code § 201-203);
21                                               7.  Failure to Keep Requisite Payroll Records
                                                     (Cal. Lab. Code § 1174(d));
22                                               8.  Failure to Provide Timely and Accurate
                                                     Wage Statements (Cal. Lab. Code § 226(a),
23                                                   226(e));
                                                 9.  Failure to Reimburse Business Expenses
24                                                   (Cal. Lab. Code §§ 450, 2802; IWC Wage
                                                     Order 4-2001);
25                                               10. Unfair Competition (Bus. & Prof. Code §
                                                     17200 et seq.)
26                                               11. Violations of the Private Attorney General
                                                     Act (Labor Code §§ 2698-2699.8)
27                                               12. Violation of the Fair Labor Standards Act, 29
                                                     U.S.C. §§ 201 *et seq.*
28                                               13. Quasi-Contract Claim for Restitution

                                                 **JURY TRIAL DEMANDED**

1
2

**TABLE OF CONTENTS**

<u>Page No.</u>

I.    INTRODUCTION .................................................................................................1

II.   JURISDICTION AND VENUE .........................................................................4

III.  THE PARTIES....................................................................................................5

IV.   FACTS COMMON TO ALL CLASS MEMBERS AND AGGRIEVED EMPLOYEES ......7

      A.    Pruvit Is A Successful Multi-Level Marketing Company That Is Dependent On Its Promoters To Engage In Social Media Marketing On Its Behalf ...............................7

      B.    Pruvit Promoters Are Employees ..........................................................10

            1.    Controlling Law .....................................................................10

            2.    Promoters Are Not Free From Pruvit's Control. .....................13

                  i.    Pruvit's Reliance On an E-Commerce Platform Limits Promoters' Discretion and Promotes Online Sales Over In-Person Interactions. ......15

                  ii.   Pruvit Exerts Strict Control and Monitoring Over Promoters' Marketing. ...................................................15

            3.    Promoters' Work Is Not Outside Pruvit's "Usual Course of Business."........16

            4.    Pruvit Cannot Meet Its Burden To Show That Promoters Are "Customarily Engaged" In A Separate Business........................16

            5.    Pruvit Promoters Are Not "Direct Sellers."............................18

                  i.    Background on MLMs and the Direct Sales Exemption. ........................18

                  ii.   Pruvit Promoters Do Not Perform the Jobs Identified in California's Direct Sales Exemption..............................................19

                  iii.  Pruvit's Modern E-Commerce Business Is Unlike Past and Present Direct Sales Companies. .......................................23

            6.    The Terms And Conditions In The Agreement Are Unconscionable, Unfair, And Unlawful....................................24

      C.    Pruvit's Misclassification of Plaintiff And Promoters in California Was Willful.....26

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

D.    Pruvit's Misclassification Of Promoters And Unfair Business Practices Harm The Public. ................................................................28

    1.    Pruvit Uses Widespread Advertising Practices Directed At The General Public To Recruit New Promoters. ..................................28

    2.    Pruvit's Unfair And Unlawful Conduct Harms the Public, including California, In Other Ways. ..........................................30

E.    Plaintiff's Experiences As A Pruvit Promoter. ...............................31

V.    CLASS ALLEGATIONS ................................................................34

VI.    FACTS RELATING TO PLAINTIFF AS A PRIVATE ATTORNEY GENERAL ............37

VII.    CAUSES OF ACTION ...............................................................38

FIRST CAUSE OF ACTION ...........................................................38

SECOND CAUSE OF ACTION ........................................................40

THIRD CAUSE OF ACTION ..........................................................41

FOURTH CAUSE OF ACTION ........................................................43

FIFTH CAUSE OF ACTION ...........................................................44

SIXTH CAUSE OF ACTION ...........................................................45

SEVENTH CAUSE OF ACTION .......................................................46

EIGHTH CAUSE OF ACTION .........................................................47

NINTH CAUSE OF ACTION ..........................................................49

TENTH CAUSE OF ACTION ..........................................................50

"Unlawful" Prong ..................................................................51

"Unfair" Prong ....................................................................51

UCL Injury and Remedies ..........................................................53

ELEVENTH CAUSE OF ACTION .....................................................54

TWELFTH CAUSE OF ACTION ......................................................56

THIRTEENTH CAUSE OF ACTION ..................................................57

VIII.    PRAYER FOR RELIEF ............................................................59

IX.    DEMAND FOR TRIAL BY JURY ..................................................60

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Plaintiff Jennifer Carrera ("Plaintiff") brings this action, individually, and behalf of a class of similarly situated individuals, against Pruvit Ventures Inc.; LLC; Brian Underwood; Christopher Harding; Terry LaCore; Jenifer Grace; Blake Mallen; and DOES 1–50, inclusive, (collectively, "Defendants" or "Pruvit"). Plaintiff's allegations against Defendants are based upon investigation carried out by Plaintiff's counsel, except for allegations pertaining specifically to Plaintiff, which are based upon Plaintiff's personal knowledge.

## I.    **INTRODUCTION**

1.    Pruvit is a massively successful company that, for years, has exploited its California and nationwide salesforce by misclassifying its workers as independent contractors rather than as employees. Plaintiff was a Pruvit "Promoter," one of the approximately 19,000 active Pruvit sales workers who sell Pruvit products through their online networks under Pruvit's strict direction and control.[1] In exchange for Promoters' work promoting the brand on social media, acquiring new customers, engaging existing customers, providing customer service, recruiting and training new Promoters, and driving traffic to Pruvit's website, Pruvit pays them, at most, a paltry commission.

2.    Brian Underwood, Christopher Harding, and Terry LaCore founded Pruvit in 2015 to develop and sell online a range of diet supplements and "Keto" nutritional products. Pursuant to Pruvit's business model, all of its product sales are done through its Promoters, who market and sell Pruvit products. Pruvit has spent a great deal of time and resources on implementing and managing a broad range of employment policies and procedures for their Promoters. Despite designating these salespeople as independent contractors, these Promoters are in fact employees under California law and federal law. Pruvit has violated numerous provisions of the California Labor Code and applicable IWC Wage Order, as well as the Fair Labor Standards Act (FLSA), by denying its Promoters the compensation, other benefits and statutory entitlements that they are owed.

3.    Pruvit maintains a centralized, rigorous, and stringent sales policy to which each of its Promoters must rigidly adhere should they expect any commission for their sales of Pruvit products. Even when these Promoters do follow Pruvit's exacting direction to the tee, the majority

---

[1] *Herbalife to Acquire Assets of Pro2col Health and Pruvit Ventures, and Controlling Ownership Interest in Link BioSciences*, HERBALIFE, Mar. 12, 2025, https://ir.herbalife.com/news-events/press-releases/detail/914/herbalife-to-acquire-assets-of-pro2col-health-and-pruvit.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

of Promoters fail to so much as break even, having sunk substantial personal investment into business expenditures which Pruvit shifts onto its frequently financially insecure workers and which Pruvit refuses to reimburse.

4.    Via its pervasive marketing and sales guidelines, Pruvit directs Promoters to market and sell a variety of "Keto" diet supplements. In exchange for the Promoters' work promoting the brand on social media, referring new customers, providing customer service, and driving traffic to Pruvit's website, Pruvit pays Promoters at most a paltry commission.

5.    Pruvit's ability thus far to avoid accountability to its employees turns on the fact that it operates as a multi-level marketing business ("MLM").[2] Pruvit's recruitment tactics purportedly promise its Promoters the opportunity to build a business; in reality, however, they supply Pruvit with free marketing and sales support that would otherwise cost tens of millions.

6.    California legislature's codification of the "ABC Test" in AB 5 did include a "direct sales" exemption, which incorporated a definition appearing in a 40-year-old statute, California's Unemployment Code § 610. Among other things, the exemption is expressly limited only to those salespersons making "in person" sales, such as door-to-door salespeople and home "Tupperware party" hosts. It does not cover Pruvit's modern, online business model, where Promoters drive social media engagement under Pruvit's guidance and direction, directing consumers to Pruvit-controlled websites, where Pruvit accepts and processes the sales and fulfills the orders, while also collecting and benefiting from the consumer data it acquires from these leads. The result is a coordinated marketing campaign that increases exposure and awareness of the Pruvit products and is essential to the company's ability to reach new customers.

7.    As articulated in Pruvit's own Policies & Procedures, "[s]ales to retail customers may be done directly through Promoters' replicated websites."[3] These "Replicated Websites" display the same Pruvit website as normally shown, but with "You are shopping with [Promoter's Name]"

---

[2] Gerald Albaum & Robert A. Peterson, *Multilevel (Network) Marketing: An Objective View*, 11 MARKETING R. 347, 347–61 (2011).

[3] Exhibit A, Policies & Procedures, § 10.2, PRUVIT, https://support.justpruvit.com/hc/en-us/articles/360052011752-Policies-Procedures (last visited Jan. 24, 2025).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

displayed in the top left corner. Promoters cannot edit the content, text, photos, prices, or any aspect of the Replicated Website, which only serves to give them credit for sales.

8.     For all orders through Promoters' Replicated Websites, Pruvit directly fulfills and ships the orders. Promoters are forbidden from creating their own websites to sell products or selling via online reselling platforms (e.g., eBay, Facebook Marketplace).

9.     Pruvit strictly controls the work product of its Promoters, in part by ensuring that they follow its rigid guidelines for marketing content and recruiting materials. In recent years, Pruvit's direction and control of its Promoters work product has become all-encompassing. Pruvit developed strict marketing guidelines partially in response to being subjected to media scrutiny after it surfaced that the company had tacitly encouraged its Promoters to make false and dangerous claims health claims that Pruvit offerings could hinder the transmissibility and/or severity of COVID.

10.     Plaintiff was a victim of Pruvit's practices. Like all Promoters, in accordance with Pruvit's strict marketing and sales protocols, Plaintiff was trained by other Promoters and through Pruvit materials, and was required to market, distribute, and sell products to the public in accordance with Pruvit's instructions and parameters. And in return, Plaintiff was paid virtually nothing, while incurring unreimbursed personal costs to perform the work on Pruvit's behalf.

11.     Nationwide, Promoters across the country are subject to the same Promoter Agreement, the same compensation structure, training protocols, and control Pruvit over the manner and means of their work. Additionally, pursuant to FLSA, as amended, 29 U.S.C. §§ 201 et seq., Plaintiff and others similarly situated are entitled to recover from Defendants.

12.     For these reasons, Plaintiff brings this action to recover unpaid wages, overtime compensation, penalties, interest, injunctive relief, other equitable remedies, damages, and reasonable attorneys' fees and costs under the California Labor Code, Cal. Lab. Code §§ 201, 202, 203, 204, 226(a), 226.7, 226.8, 510, 512(a), 1174(d), 1194, 1197, 1197.1, 1198, 2800, 2802 and 2698 et seq. (the "CLC"), IWC Wage Order 4 (8 Cal. Code Regs. § 11040), and California Unfair Competition Law (Cal Bus. & Prof Code §§ 17200 et seq.). In addition, Pruvit's conduct violates various municipal and county codes in California, including but not limited to City of L.A. Cal. Code art. 7-7.5; County of Los Angeles Code § 8.100.040, et seq., San Francisco Cal. Code 12R.

Plaintiff additionally bring claims under FLSA, 29 U.S.C. § 201 *et seq.*, including 29 U.S.C. §§ 206, 207, 211, and 216, on behalf of a nationwide collective of similarly situated Promoters and seeks declaratory relief that Promoters are employees under both federal and California law and that the Promoter Agreement is void and unenforceable as contrary to law. Plaintiff also seeks equitable relief in the form of disgorgement of profits and restitution for the fair market value of services rendered, less compensation paid, on behalf of a nationwide class.

13.    Upon information and belief, Pruvit has not addressed and/or changed its unlawful practices including failing to provide complaint meal and rest periods and has continued to deprive employees of millions of dollars in straight and overtime compensation. By bringing this action, Plaintiff intends to stop this ongoing and unlawful practice and recover back wages and overtime to which she is rightfully entitled.

## II.    JURISDICTION AND VENUE

14.    Defendants are subject to personal jurisdiction in this judicial district.

15.    On November 7, 2025,  Defendants removed this action from Superior Court of California, County of Contra Costa to this Court, alleging proper jurisdiction under CAFA, 28 U.S.C. § 1332(d) and removal jurisdiction under 28 U.S.C. § 1441.

16.    This Court has original jurisdiction under 28 U.S.C. § 1331 because this case presents federal questions brought under the FLSA.

17.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

18.    This Court has jurisdiction over all Defendants because, upon information and belief, Defendants are citizens of California, have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by California courts consistent with traditional notions of fair play and substantial justice. Indeed, Pruvit has registered with the California Secretary of State as conducting business in California since 2016. Moreover, the acts and omissions detailed herein occurred in California.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

19.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district; Plaintiff resided in Martinez, CA and Vallejo, CA when she performed work for Defendants from her home. Defendants' acts and omissions in violation of the relevant labor statutes are thus physically tied to Plaintiff's residential addresses. The majority of the acts, events, and violations detailed herein occurred within this district.

20.     Upon information and belief, Defendants direct and control a large workforce of Promoters throughout California, including this district, and have agents, employ individuals, and/or transact business in the State of California, within this district.

III.    **THE PARTIES**

21.     Plaintiff Jennifer Carrera is an individual and was a resident of Martinez, CA and Vallejo, CA during the relevant period.

22.     Defendant Pruvit Ventures Inc. is an entity incorporated under the laws of the State of Texas, with principal places of business in Prospect, Kentucky and/or Melissa, Texas.

23.     Plaintiff is informed and believes and based thereon alleges that Brian Underwood is, and at all times relevant hereto was, an individual residing in Louisville, Kentucky, as well as a co-founder, co-owner, and the Chief Executive Officer of Pruvit. Plaintiff is further informed and believes and based thereon alleges that Brian Underwood, in his capacity as the CEO of Pruvit, exercised control over the wages, hours and/or working conditions of Plaintiff and other aggrieved employees, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders. Underwood is also an employer within the meaning of 29 U.S.C. § 203(d) and is individually liable under the FLSA, because he exercised substantial control over Pruvit, including by dictating the direction of the company, negotiating on behalf of the company, and with respect to the policies and practices at issue in this case such as classification of Promoters.

24.     Plaintiff is informed and believes and based thereon alleges that Christopher Harding is, and at all times relevant hereto was, an individual residing in Dorado, Puerto Rico, as well as a co-founder and co-owner of Pruvit. Plaintiff is further informed and believes and based thereon alleges that Christopher Harding, in his capacity as a co-owner of Pruvit, exercised control over the wages, hours and/or working conditions of Plaintiff and other aggrieved employees, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders.

25.     Plaintiff is informed and believes and based thereon alleges that Terry LaCore is, and at all times relevant hereto was, an individual residing in Melissa, Texas, as well as a co-founder and co-owner of Pruvit. Plaintiff is further informed and believes and based thereon alleges that Terry LaCore, in his capacity as a co-owner of Pruvit, exercised control over the wages, hours and/or working conditions of Plaintiff and other aggrieved employees, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders.

26.     Plaintiff is informed and believes and based thereon alleges that Jenifer Grace is, and at all times relevant hereto was, an individual residing in Melissa, Texas, as well as an executive of Pruvit . Plaintiff is further informed and believes and based thereon alleges that Jenifer Grace, in her capacity as an executive of Pruvit and/or LaCore Enterprises, exercised control over the wages, hours and/or working conditions of Plaintiff and other aggrieved employees, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders.

27.     Plaintiff is informed and believes and based thereon alleges that Blake Mallen is, and at all times relevant hereto was, an individual residing in Los Angeles, California, as well as the President of Pruvit. Plaintiff is further informed and believes and based thereon alleges that Blake

Mallen, in his capacity as the President of Pruvit, exercised control over the wages, hours and/or working conditions of Plaintiff and other aggrieved employees, including by informing employees when to report to work and what work hours should actually be recorded, violated, or caused to be violated, the above-referenced and below-referenced California Labor Code provisions in violation of §§ 558.1, 1197.1 and the Industrial Welfare Commission ("IWC") Wage Orders.

28.     The true names and capacities of Defendants sued as DOES 1–50, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure. Plaintiff will seek leave to amend this Demand when said true names and capacities have been ascertained.

29.     Plaintiff brings this action on behalf of herself and all other similarly situated employees, as authorized under the FLSA, 29 U.S.C. § 216(b).

## IV.     FACTS COMMON TO ALL CLASS MEMBERS AND AGGRIEVED EMPLOYEES

### A.     Pruvit Is A Successful Multi-Level Marketing Company That Is Dependent On Its Promoters To Engage In Social Media Marketing On Its Behalf

30.     Pruvit is a massively successful MLM that serves both US and international markets with its portfolio of ketone dietary supplements, including powders and pre-mixed drinks, that claim to help the body replicate the health results of the popular "Keto diet." Pruvit was founded in 2015 by Christopher Harding, Brian Underwood, and Terry LaCore, in Melissa, Texas.[4] Until at least June 2024, if not continuing to the present, LaCore Enterprises, an investment agency also founded by Terry LaCore, exerted significant control and influence over Pruvit as owner, affiliate, and/or alter-ego, and a 2024 Pruvit press release states that "Pruvit will continue to be supported by the LaCore ecosystem"—a term LaCore Enterprises uses to refer to its portfolio of companies.[5] Pruvit reported $336 million in revenue in 2023.[6]

---

[4]     *Pruvit Founders Lead Company Buyback,* EIN PRESSWIRE, https://www.einpresswire.com/article/720969392/pruvit-founders-lead-company-buyback-company-to-revert-to-100-founder-ownership-in-107-million-transaction (June 18, 2024).

[5]     *Our Ecosystem,* EIN PRESSWIRE, https://www.lacore.com/ecosystem (last visited Feb. 3, 2025).

[6]     *Global 100 Lists: 2024 Top Direct Selling Companies in the World,* DIRECT SELLING NEWS, https://www.directsellingnews.com/global-100-lists/ (last visited Jan. 22, 2025).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

31.    Pruvit's success stems from its dependence on a massive network of Promoters. The organization's multi-level marketing, or "network marketing" or "direct sales," structure is the sole reason for Pruvit's continued profitability.

32.    But Pruvit has for a decade exploited its California salesforce of Promoters by misclassifying these so-called Promoters as independent contractors rather than as employees. In knowingly and willfully misclassifying these employees, Pruvit has been able to mine free marketing and sales support from their Promoters. The cost of sales and marketing that Pruvit has thus far offloaded on its Promoters is to the tune of tens of millions.

33.    This is particularly egregious as Pruvit's workforce is primarily comprised of marginalized and financially insecure individuals. Pruvit targets and recruits people who are often shut out of traditional workplaces, such as those with criminal records, women who were raised in or who are active in certain religious communities,[7] women with childcare responsibilities, and military wives.[8] Due to their alienation from traditional workplaces, those targeted by Pruvit tend to be less familiar with their labor protections and with employment law generally. Unfortunately, these individuals, already stretched thin energetically and financially, are less well-positioned to understand their rights as workers, less likely to identify when their protections are violated, and less able to seek recourse when such violations occur.

34.    Over the last decade, Pruvit's sales have moved from in-person to primarily online. This means that the lion's share of Pruvit product sales would not be exempt under the AB 5 "direct

---

[7] "As MLMs are presented to the marketplace as low-barrier opportunities to start one's own business, we suggest that this may speak directly to people who strongly endorse Protestant work ethic (PWE), making them more inclined toward MLM participation, and financial outcomes associated with that participation […] [C]ounties with higher Protestantism had more consumers participating in MLMs who lost $1000 or more *and* those consumers incurred more *negative* financial outcomes." Katharine Howie et al., *Associations Between Protestant Work Ethic and Multilevel Marketing Participation and Financial Outcomes,* 249 ACTA PSYCHOLOGIA, https://doi.org/10.1016/j.actpsy.2024.104409; *see also,* Orla McGrath, *Expert Explains Why Mormon Women Embrace Multi-Level Marketing,* COLO. ARTS & SCI. MAG. (April 24, 2023), https://www.colorado.edu/asmagazine/2023/04/24/expert-explains-why-mormon-women-embrace-multi-level-marketing.

[8] "The vast majority of people who join multi-level marketing companies do not earn a profit. Those people [] also tend to be women who seek additional income to support a family or to find community." Annie Blackman, *Regulating The Reluctant: Policies That Benefit Vulnerable Participants In Multi-Level Marketing,* 25 U. PA. J.L. & SOC. CHANGE 83, 83 (2021); *see generally* Krista Marie Federico, Dissertation*, She Works Hard for No Money: Understanding Women's Participation in Multi-Level Marketing Organizations,* U. ARIZ. SCH. SOCIO. (2020).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

sales" exemption, California's Unemployment Code § 610. A confluence of factors precipitated the shift of sales to the virtual realm. First and foremost, social media sites such as Facebook, X (Twitter), Instagram, and TikTok have evolved into powerful marketing tools, and the adoption of these social media are now ubiquitous in the direct sales of Pruvit products. Social media platforms are now the predominant way MLM sellers generally connect with both their potential clients and their community of sellers.[9] In as early as 2019, nearly half of all Americans indicated being "inundated" by social media connections who flooded their "feeds" with posts attempting to sell MLM-affiliated products.[10] Where once direct sales required sellers to walk door-to-door or host "Tupperware parties," now all Promoters have to do is "post their products on social media to capture the attention of hundreds or thousands of people at once."[11]

35.    Secondly, COVID and associated lockdowns halted the ability of Promoters to perform in-person sales, while also accelerating the widespread adoption of video chatting software like Zoom among their potential customer bases. This led Promoters who had not yet already adapted to fully-remote sales to do so in order to adhere to lockdown policy. And since the initial draw for many Promoters was Pruvit's promise of flexible, autonomous work, it can be inferred that the flexibility that comes with online sales means that there will be no future significant, de-transition to in-person sales by Promoters.

36.    While some MLMs rely on home parties, door-to-door sales calls, and other forms of in person selling, Pruvit's model is designed so that Promoters can work online to solicit leads and recruit new Promoters. Pruvit acknowledges that "Social Media sites may be used to advertise Pruvit products or services"[12] and that "[s]ales to retail customers may be done directly through Promoters' replicated websites."[13]

---

[9] Lindsay R. Maher, *Note: Americon Dream: Social Pressures and Lackluster Regulation Allow Multi-Level Marketing Companies to Function as De Facto Pyramid Schemes*, 108 MINN. L. REV. 1587, 1622 (2024).
[10] Erika Giovanetti, *MLM Consultants Pressure Friends and Family to Overspend, and It's Straining Relationships*, LENDINGTREE, Dec. 16, 2019, https://www.lendingtree.com/debt-consolidation/survey-mlm-consultants-pressure-spending/.
[11] *Id.*
[12] Ex. A § 14.5.
[13] *Id.* § 10.2.

37.    Despite the pivotal role of its salesforce, Pruvit has never properly classified Promoters as employees. Rather, Pruvit adheres to a multi-level marketing organization structure, in which it offers people the purported "opportunity" to develop their own business earning commission by selling Pruvit products and recruiting others to do the same, then designates them as "independent contractors."

38.    However, these Promoters are not independent contractors under applicable law. Pruvit instead chose to unlawfully secure an expansive marketing and sales network for minimal to no cost. It has reaped enormous profits by deliberately avoiding paying wages and benefits to those performing the sales work that forms the backbone of Pruvit's business. Pruvit charges its Promoters for access to the instrumentalities needed to sell products, further increasing its profits and decreasing Promoters' pay, in violation of California law. The intended result is for Promoters to receive, at most, de minimis profit from their work, while providing free labor and shouldering the costs of doing business that Pruvit should be bearing.

**B.    Pruvit Promoters Are Employees**

**1.    Controlling Law**

39.    Companies like Pruvit were never supposed to be allowed to run an entire business on the backs of independent contractors. People who work in a company's core line of business are its "employees." *United States v. Silk*, 331 U.S. 704, 718 (1947).

40.    Pruvit claims an unprecedented portion of its workforce as "independent contractors." In its most recently published numbers, Pruvit disclosed that in 2022 it had 25,251 Promoters in the United States [14] and claimed an estimated 11-50 employees. [15] Thus, in 2022, Pruvit claimed at least 99.8% of its workforce as "independent contractors." With Pruvit claiming about 19,000 Promoters in 2025 [16], the proportion of workers that Pruvit considers "employees" is likely under 0.3%—this will be confirmed should this matter proceed to discovery.

---

[14]    *Income Disclosure Statement*, PRUVIT, https://support.justpruvit.com/hc/en-us/articles/360052758911-Income-Disclosure-Statement (last visited Jan. 24, 2025).

[15]    Pruvit, LINKEDIN, https://www.linkedin.com/company/pruvitbetter/about/ (last visited Jan. 22, 2025).

[16]    *Herbalife to Acquire Assets of Pro2col Health and Pruvit Ventures, and Controlling Ownership*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

41.   Pruvit employees perform a variety of roles, including research, product development, architects, and brand marketing.

42.   But the Promoters, who make up the bulk of Pruvit's workforce, are denied even the most basic protections of federal and state labor laws. Pruvit does not pay them minimum wage; it does not pay overtime; and it does not reimburse business expenses, such as internet connections, laptops, smart phones, or post promotion over Facebook, YouTube, and Instagram. Its classification of its Promoters also deprives them of basic protections against discrimination and sexual harassment.

43.   By design, "independent contractors" are exempted from "nearly every" labor law, but this classification was not meant to be a loophole for companies like Pruvit, whose Promoters are effectively modern-day telemarketers. [17] "Historically, firms reserved the independent contractor designation for entrepreneurial individuals whose skills demanded higher pay in the open market." [18] With this in mind, "[l]egislatures rationalized excluding [independent contractors] from most employment laws because these individuals did not require the same legal protections as potentially more vulnerable, less-skilled 'employees.'" [19]

44.   Today, Pruvit preys upon many of the most vulnerable members of our society. Despite being a $40 billion industry, "the vast majority of people involved in them don't make money off of MLMs, and many people lose money." [20] Pruvit's Promoters are no exception: according to Pruvit's own Promoter Income Disclosure Statement, the median annual income for Promoters is just $10.59—meaning more than half of Promoters don't even recoup a quarter of the $49 annual fee Pruvit charges them to be a Promoter. [21] "Unranked" Promoters, which make up

---

[17] Keith Cunningham-Parmeter, *From Amazon to Uber: Defining Employment in the Modern Economy*, 96 B.U. L. Rev. 1673, 1683–84 (2016).

[18] *Id.*

[19] *Id.*

[20] Emily Stewart, *$5 Jewelry And An MLM Conference Gone Wrong: Multilevel Marketing Companies Were the "Perfect" Pandemic Business*, VOX (Sept. 23, 2021), https://www.vox.com/the-goods/22688317/mlm-covid-19-pandemic-recruiting-sales-paparazzi (citing study finding that 99 percent of MLM participants lose money).

[21] *Income Disclosure Statement*, PRUVIT, https://support.justpruvit.com/hc/en-us/articles/360052758911-Income-Disclosure-Statement (last visited Jan. 24, 2025).

*Interest in Link BioSciences*, HERBALIFE, Mar. 12, 2025, https://ir.herbalife.com/news-events/press-releases/detail/914/herbalife-to-acquire-assets-of-pro2col-health-and-pruvit.

SECOND AMENDED CLASS ACTION AND PAGA COMPLAINT

44.15% of Promoters, had an average annual income of $10.48, with Promoters across the ranks failing to earn even a single dollar of commission.[22] Despite knowing how few people will even break even on their annual fee, Pruvit prominently claims that it designed its compensation plan "for the average person that wants to make a full time income."[23]

45.   MLMs like Pruvit grew during the COVID-19 pandemic, recruiting salespeople by promising remote work for the unemployed.[24] On April 24, 2020, the Federal Trade Commission sent Pruvit a warning letter for making claims about potential earnings related to the economic fallout from the pandemic, highlighting specific misleading claims in social media posts and online videos that targeted out-of-work people.[25] These are the precise individuals that legislatures meant to shield with minimum wage and other workplace protections.

46.   Under the FLSA, whether a worker is an employee or an independent contractor is determined by the "economic reality" of the relationship, rather than labels or contractual designations. The FLSA defines "employ" expansively as "to suffer or permit to work," and courts have recognized that this breadth reflects Congress's intent to extend the statute's protections to the widest range of workers.

47.   Promoters are economically dependent on Defendants; they are subject to Defendants' control, perform work integral to Defendants' business, and have no meaningful opportunity for profit or loss independent of Defendants' compensation structure.

48.   In addition to federal law, in recent years, state legislatures have taken action to send a clear message that most workers should be "employees."

49.   California has adopted the "ABC test" to determine whether a company like Pruvit has misclassified its workers as "independent contractors." Because employee status was meant to

---

[22] *Id.*

[23]   *Pruformance Rewards Program Guide*, PRUVIT, https://support.justpruvit.com/hc/en-us/articles/4403638354317-Pr%C3%BCformance-Rewards-Program-Guide-Introduction (last visited Jan. 24, 2025).

[24]   Abby Vesoulis & Eliana Dockterman, *Pandemic Schemes: How Multilevel Marketing Distributors Are Using the Internet—and the Coronavirus—to Grow Their Businesses*, TIME, Jul. 9, 2020, https://time.com/5864712/multilevel-marketing-schemes-coronavirus/.

[25]   Letter from Fed. Trade Comm'n to Pruvit Ventures, Inc., *re: Warning Regarding Health and Earnings Claims Related to Coronavirus Disease 2019 (COVID-19)* (Apr. 24, 2020), https://www.ftc.gov/legal-library/browse/warning-letters/warning-letter-pruvit-ventures-inc.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

be the default, the ABC test "presumptively considers all workers to be employees and permits workers to be classified as independent contractors only if the hiring business demonstrates that the worker in question satisfies *each* of three conditions:

    a)  that the worker is free from the control and direction of the hirer in connection with the performance of the work… ***and***

    b)  that the worker performs work that is outside the usual course of the hiring entity's business; ***and***

    c)  that the worker is customarily engaged in an independently established … business of the same nature as that involved in the work performed."

*Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903, 956-57 (2018) (emphasis in original).

### 2.  Promoters Are Not Free From Pruvit's Control.

50.    To engage in online marketing work for Pruvit, the company does not require Promoters to hold any special experience, skills, license, or education level. Rather, Pruvit requires only that a prospective Promoter use their website to purchase an annual Promoter Fee of $49.00. [26] To enroll, prospective Promoters add the Promoter Fee to their online shopping cart, where Pruvit prominently leads them to believe that they must purchase starter packs of products ranging in price from $558.60 to $1,021.44 to become a Promoter. [27] After checking out, usually after buying an expensive starter kit, Pruvit automatically renews Promoters' seller status—and charges the $49.00 fee—annually, regardless of the Promoter's sales.

51.    All Promoters are then required to adhere to a series of terms and conditions that Pruvit collectively refers to as the "Pruver Agreement" ("Agreement"), which consists of the Pruvit Policies & Procedures and Pruvit Compensation Plan. A true and correct copy of the operative "Pruvit Policies & Procedures" is attached hereto as **Exhibit A** and provides that Promoters are to be considered independent contractors.

---

[26]  *Income Disclosure Statement*, Pruvit, https://support.justpruvit.com/hc/en-us/articles/360052758911-Income-Disclosure-Statement (last visited Jan. 24, 2025).
[27] *Become a Promoter*, Pruvit, https://www.pruvit.com/promoter (last visited Jan. 17, 2025).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

52.    The Policies & Procedures are 46 pages long and set out most of the requirements of the Promoters, including compliance with the "Code of Ethics," requiring Promoters to promise to market Pruvit and engage in customer service in accordance with Pruvit directives. [28]

53.    Once a prospective Promoter has enrolled, they can begin selling. Because Pruvit treats the Promoters as independent contractors, it does not pay them any salary, wages, or benefits. Rather, as is typical in the MLM industry, the Pruvit Compensation Plan provides for two main types of compensation: (1) for sales the Promoter makes to consumers, the Promoter receives a small percentage as a commission, 20% per product sold; and (2) if the Promoter builds a "downline," i.e., recruits other new Promoters to market and sell Pruvit products and recruit more Promoters, then the "upline" Promoter receives commissions for sales made by those Promoters in their downline. [29] Pruvit also offers special "bonuses" to those Promoters who hit certain sales and recruiting metrics in various time frames.

54.    Promoters are responsible for all expenses. This includes an auto-renewing annual Promoter Fee of $49.00 and the minimum monthly personal purchase requirement to qualify for commission (currently approximately $50 in products, prior to tax, shipping, and handling charges, though it can vary). In addition, Promoters do not receive products for free or even at a Promoter-only discount, but must purchase them at customer price from Pruvit to create promotional posts and testimonials on social media or to distribute samples. Pruvit does not reimburse Promoters for these purchases, nor for the costs of a cell phone, internet, and other routine business expenses.

55.    In the Agreement, Pruvit gives itself broad rights to control Promoters and mandate conformance with its directives.

---

[28] Ex. A § 1.2.

[29] The "upline" and downline" concepts are the hallmark of the MLM structure. To illustrate, when an established Promoter, whom we will call "Amy," recruits a friend, whom we will call "Bill," to be a Promoter, Bill is in Amy's downline; and Amy is in Bill's upline. If Bill in turn recruits a new Promoter, whom we will call "Chris," then Bill has an upline (to Amy) and a downline (to Chris); the established Promoter Amy now has two levels to her downline, to Bill (first level), and Chris (second level). Should Chris then recruit someone, the established Promoter Amy would have three levels to her downline.

i. *Pruvit's Reliance On an E-Commerce Platform Limits Promoters' Discretion and Promotes Online Sales Over In-Person Interactions.*

56.     **First,** the Promoters' Pruvit-issued websites, "Replicated Sites," are designed in a way that ensures that Promoters operate in compliance with Pruvit's marketing directives as laid out in its Agreement. Because the Replicated Site is not a standalone website, but a portal by which the public can view the products on Pruvit's own website in a way that gives credit to the Promoter for the sale, the product pages and descriptions are generated entirely and solely by Pruvit, with no option for the Promoter to revise or supplement either the language or photos of the products. Thus, the Promoter is selling products using only Pruvit-approved marketing language and intellectual property, as required by the Agreement.

57.     **Second**, Pruvit sets the prices online and does not permit adjustments, nor is there a way for a Promoter to allow a customer to get a discount, receive a free gift, make a donation, or use any other offer that is not available on Pruvit's main platforms and to all Pruvit customers. This significantly limits Promoters' marketing discretion.

58.     **Third,** Pruvit also restricts Promoters from using any platform other than Pruvit's website to make online sales; in other words, they cannot sell the products directly to consumers on Facebook Marketplace, eBay, Amazon, or similar sites. By Pruvit making the Replicated Sites available and performing the back-end work, Promoters would be less likely to seek out other e-commerce platforms to sell the products even if they were permitted.

ii. *Pruvit Exerts Strict Control and Monitoring Over Promoters' Marketing.*

59.     Pruvit maintains a chokehold on Promoters' ability to independently decide how to market products. While Pruvit "encourage[s]" Promoters to "use the sales aids and support materials produced or expressly authorized by Pruvit," should Promoters choose to make their own content, Pruvit mandates corporate review: "Promoters must submit via email all sales aids, promotional materials, advertisements, websites, training material, flyers, along with any other literature to Pruvit's Compliance Department for approval prior to use at compliance@pruvithq.com." [30]

---

[30] Ex. A § 3.2.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

60.    For example, social media images posted by Promoters "must come from the Pruvit approved library, official Pruvit website, or social media outlet," and Promoters are only allowed to post links to their Replicated Website on social media platforms.[31]

61.    Pruvit provides specific scripts for Promoters to use in posting and messaging on social media, including pre-written messages to copy and send to connections and people who interact with their posts.

62.    Promoters are not allowed to offer sales specific to their customers, as Pruvit mandates that products must always be advertised at full retail price.[32] This means that Promoters cannot decide to offer free shipping or a special discount to be competitive during traditional high-sales periods such Black Friday or Cyber Monday.

63.    To ensure that only Pruvit-supplied or approved content is being used, Pruvit monitors all Promoters' social media accounts used for selling Pruvit products, requiring Promoters to provide up-to-date links to all their social media accounts.

### 3.    Promoters' Work Is Not Outside Pruvit's "Usual Course of Business."

64.    Pruvit views the work of the Promoters to market the products online as central to its business model; in Pruvit's own words it states it "believes that the strength of the company is our community and the people that drive our message, products and programs." The primary benefit to Pruvit from the Promoters' work is the way in which they drive people to Pruvit's website and fuel engagement with the brand. Pruvit gets increased visibility on social media, enabling it to compete in a saturated wellness and diet market more cheaply. For much the same reason that brands turn to influencers, Pruvit understands that social media posts from friends may be more persuasive in driving interest and generating paying customers than a paid advertisement.

### 4.    Pruvit Cannot Meet Its Burden To Show That Promoters Are "Customarily Engaged" In A Separate Business.

65.    Pruvit cannot meet its burden to show that Promoters are "customarily engaged" in an independently established sales and marketing business. Instead, most Promoters are recruited

---

[31] *Id.* § 14.5.
[32] *Id.* § 14.6.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

regardless of their skill or experience, only perform sales and marketing for Pruvit (using Pruvit's approved platforms), and maintain no separate sales or marketing business. Indeed, Pruvit bans Promoters from selling for any other multi-level marketing companies. [33]

66.    Pruvit's Promoters are not required to have any background in sales, marketing, or nutritional supplements prior to becoming a Promoter. Promoters are not required to have any licensure or meet any educational requirements, either. For example, they do not need to be licensed nutritionists, nor have any schooling, training, or prior employment in fields relating to health and fitness, or nutrition. Nor does Pruvit require that they have schooling, training, or prior employment in marketing, sales, or general business. Instead, Pruvit only requires that a prospective Promoter complete a short application asking for basic personal information and agree to pay the annual fee. In fact, most Promoters have little to no prior relevant experience or training.

67.    Most Promoters have never owned or operated their own separate sales business outside of Pruvit. And most Promoters do not maintain any registered or incorporated sales or marketing business, for their work with Pruvit or otherwise. Promoters generally do not hold themselves out to others as sales or marketing professionals or maintain any office or business address.

68.    Rather than rely on Promoters' own business acumen or sales experience to market products, Pruvit provides the instrumentalities of Promoters' sales and marketing work. These include the "Back Office" (a password-protected website which includes a tool for Promoters to send emails to customers and their downline Promoters, as well as a gallery of approved images and video clips), the Replicated Site (the content of which is provided by Pruvit and does not allow deviation from the standard template), and Pruvit scripts and graphics for use in marketing.

69.    Ultimately, Pruvit intends for Promoters to see Pruvit as an employer, not as client. In other words, regardless of whether a Promoter maintains any kind of independent business, Pruvit's policies and mandated instrumentalities of work make it so the Promoter's responsibilities are not those that are of the sort that would be performed by an independent and trained professional. For example, Pruvit requires Promoters to identify themselves by their names and as "Independent

---

[33] *Id.* § 3.6.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Pruvit Promoters" on social media profiles and posts, forbidding the use of an alias. The expectation is that the Promoters are using Pruvit's brand to sell, not their own business's identity. Likewise, Pruvit's policies promoting sales through Replicated Sites, restrictions on using other websites as a point of sale, and limitations on where the products can physically be sold effectively prevent Promoters from integrating the sale of Pruvit products into any pre-existing business. And Pruvit prohibits Promoters from using their platforms to promote other businesses, including any other multi-level marketing companies.

70.    Similarly, those experienced in social media marketing are not allowed to use the kinds of tools relied upon by professionals in the field; as discussed above, Pruvit forbids Promoters from creating or using their own graphics without explicit approval from Pruvit. People with digital marketing experience cannot leverage their skills because Pruvit does not provide access to data collected from visitors to Promoters' Replicated Website, nor the ability to track them and target ads to them. Instead, Pruvit designs the overall social media advertising campaign, and supplies the Promoters with hashtags, scripts, promotional photos and video clips, and other strategic advertising directives for the Promoters to use to sell Pruvit's products on social media.

71.    Further, Pruvit actively limits Promoters' ability to engage in sales or marketing opportunities outside Pruvit. For example, Pruvit prohibits Promoters from recruiting other Promoters to join other MLMs or even to market other MLM products to fellow Promoters. [34] Pruvit forbids Promoters from selling its products in bundles with other MLM products.

### 5.    Pruvit Promoters Are Not "Direct Sellers."

72.    Despite classifying the Promoters as Independent Contractors, they are employees under California and federal law. As set forth below, while some MLM workers might meet the narrow statutory exemption in California for those employed in "direct sales," Promoters do not.

### i.    _Background on MLMs and the Direct Sales Exemption._

73.    For many years, the MLM industry has enjoyed notoriety for its ability to carve out loopholes from state employment laws, permitting MLMs to treat its sales personnel as independent

---

[34] _Id._

contractors. These regulations were enacted in the 1970s and 1980s, and in California, the exemption describes a different job than what Pruvit Promoters perform.

74.    When AB 5 was passed in 2019, it codified the opinion in *Dynamex Operations West, Inc. v. Superior Court of Los Angeles County*, 4 Cal. 5th 903 (2018), in which it set forth a new test for misclassification (the "Dynamex Test"). When the bill was being debated, many in the MLM industry recognized that the Dynamex Test would require them to classify their workers as employees. The Direct Selling Association ("DSA"), the industry lobbying group, pushed for an exemption. As a result of those efforts, AB 5 exempts from the Dynamex Test any salesperson "described in Section 650 of the Unemployment Insurance Code, so long as the conditions for exclusion from employment under that section are met." ("Direct Sales Exemption") For such workers who fall within the exemption, the old common law test (rather than the ABC test) would govern the question of employee status.

75.    For an entity in California to be covered under the Direct Sales Exemption, the hiring entity must show that the work satisfies all three criteria set forth in the statute, namely that (a) the worker performs one of two specific types of work; (b) the worker's compensation is directly tied to sales or output, and not hours worked; and (c) the worker and business have an agreement that the worker will be treated as a contractor for tax purposes. If all three criteria are not met, then the exemption does not apply, and if the worker otherwise meets the Dynamex Test, they are misclassified. While the third of these criteria—services performed pursuant to a contract identifying the person as an independent contractor—is only facially met, and even if it were an enforceable contract, that factor is not dispositive. As discussed below, the Promoter job does not satisfy the other criteria.

      *ii.* *Pruvit Promoters Do Not Perform the Jobs Identified in California's Direct Sales Exemption.*

76.    First, for the Direct Sales Exemption to apply, the salesperson must be performing one of two narrowly defined jobs. Specifically, the Exemption requires that one be "engaged in the trade or business of primarily inperson [sic] demonstration and sales presentation of consumer products, including services or other intangibles, in the home or sales to any buyer on a buy-sell

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

basis, a deposit-commission basis, or any similar basis, for resale by the buyer or any other person in the home or otherwise than from a retail or wholesale establishment." In other words, section (a) of the Direct Sales Exemption is best understood as identifying two specific categories of direct sales jobs, ***Primarily In Person Consumer Sales Work***, and ***Wholesale/Resale Work***, that could trigger the applicability of the Direct Sales Exemptions. A Pruvit Promoter does not fall under either of these categories.

77.    ***Pruvit Promoters Are Not Engaged Primarily in In-Person Consumer Sales Work***. This job category covers those who are "engaged in the trade or business of primarily inperson [sic] demonstration and sales presentation of consumer products, including services or other intangibles, in the home." Thus, the exemption is limited to those who are *primarily* selling consumer products *in person* and *in the home*. These terms are significant, as they do not appear in the analogous job category of "direct sellers" under a later federal statute relating to taxes. *See* 26 U.S.C. § 3508(b)(2)(ii). Thus, the California exemption applies narrowly to jobs like door-to-door salespersons, or the direct sellers who work almost exclusively through the home party circuit, i.e., people who sell consumer products by meeting with other consumers in their homes.

78.    As discussed throughout, Promoters do not "primarily" sell "in person." Moreover, to the extent any Promoter in the Pruvit network was primarily conducting "in person" sales, the COVID pandemic would have pushed more sales online.

79.    ***Pruvit Promoters Are Not Engaged in Wholesale/Resale Work.*** This job category, which also has a federal parallel in the tax code, 26 U.S.C. § 3508(b)(2)(i), covers those are engaged in:

a) "sales to any buyer"

b) "on a buy-sell basis, a deposit-commission basis, or any similar basis,"

c) "for resale by the buyer or any other person", and

d) "in the home or otherwise than from a retail or wholesale establishment."

While California law does not define the terms buy-sell or deposit-commission in [b], federal tax law does. The term "buy-sell basis" is one in which one buys the product to sell the product, and gets paid for selling the product with the spread between the purchase price and the resale price, and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

term "deposit-commission basis" applies where the buyer keeps as commission for a sale of a product the deposit received from the buyer. *See* 26 U.S.C. 6041A(b)(2)(A) & (B).

80.    The "Wholesale/Resale Work" is even more narrow than "In Person Home Sales Work," and does not apply to Pruvit. Rather, Pruvit's Policies and Procedures require that Promoters sell only to themselves or to retail customers. Nowhere in the Agreement or in Pruvit's public materials does it state that compensation is on a buy-sell or deposit-commission basis.

81.    To illustrate what is meant by "Wholesale/Resale Work," a hypothetical upline Promoter Sue would be performing this work if [a] Sue was selling Pruvit products to her downline Promoter Bob [c] for Bob to resell, not to keep for his own use; and [b] Sue was compensating Bob for his resale services by permitting Bob to keep the difference between the price he paid to Sue and the product's selling price or by permitting Bob to keep the deposit he acquired. Pruvit Promoters do not work in this way, selling products to Promoters for Promoters to re-sell. If Bob directs a lead to his Replicated Site, and the lead purchases a product from Pruvit, both he and his upline Promoter (e.g., Sue) would receive a commission for sales from Pruvit. But as to Sue, [a] is not met because Sue did not sell the products to Bob. Because Bob acquired the products from Pruvit to sell at retail, not to someone to re-sell, [a] and [c] are not met. As to both, [b] is not met, because neither sold the product on those terms. Rather, Pruvit takes the full payment at the point of sale and sends the product directly to the consumer, and then separately pays the Promoter.

82.    ***The job descriptions in the Direct Sales Exemption predate significant changes to how MLMs now operate.*** By way of background, these two categories of jobs outlined in the Direct Sales Exemption were how MLMs organized at the time the Direct Sales Exemption was enacted. In the 1970s and 1980s, downline sellers hosted parties, traveled door to door, had booths at local fairs, or visited friends and family in their homes to hand out samples, catalogs, and sales sheets. They took orders and payment directly from the customer. Once the seller had enough orders, the seller placed the order with the company, received the shipment from the company, and then met with the customer again in person to deliver the product and if necessary, collect any further payment that might be due. The direct seller engaged with consumers both directly and personally; the consumers had little to no interaction with the company.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

83.    In some instances, instead of placing the order with the company, the seller performing "In Person Home Sales" would place the order with the person in their "upline," who was engaged in "Wholesale/Resale Work." The upline seller acquired products from the company, and sold them to the downline "In Person Home Sales" worker on a buy-sell or commission deposit basis for them to sell to end consumers (or to their downlines). The seller was able to do "Wholesale/Resale Work" because at the time, MLMs permitted direct sellers to fulfill their sales quotas by either selling the product to retail consumers or selling it to downline sellers.

84.    Since the Direct Sales Exemption was enacted, various changes in the MLM industry occurred to move away from this model. Most notably is the fact that over the last few decades, MLMs have been forced to make changes to their operations in response to regulatory actions and civil lawsuits by private litigants to enforce anti-pyramid scheme laws. Courts and regulators have made clear that to avoid violating criminal and civil pyramid scheme laws, MLMs needed to conduct operations so as to ensure that real, meaningful sales were happening directly to consumers—instead of primarily to sellers' own downlines. *See, e.g.*, *Webster v. Omnitrition Int'l*, 79 F.3d 776, 782 (9th Cir. 1996). It was not enough to simply have a policy that sales should be at retail; the law has evolved so as to require MLMs to enforce that policy and to demonstrate its effectiveness at ensuring participants were not merely stockpiling inventory and seeking to recoup losses by recruiting new sellers to buy the product from them.

85.    These legal developments have prompted two important changes. First, because MLMs must ensure retail sales are occurring, few if any MLMs permit sellers to perform "Wholesale/Resale Work." Certainly, Pruvit does not. Second, the work undertaken by MLMs to enforce policies as to sales at retail results in them exercising far more control than they might have decades ago.

86.    Furthermore, by implementing platforms such as the Replicated Site, Pruvit can better oversee Promoters in their work to ensure they are not engaging in activities that could run afoul of anti-pyramid scheme laws. Pruvit can oversee all retail sales, given the vast majority occur on its website and on public social media pages. While this control may protect Promoters from being a

victim of one kind of legal violation, they also remove much of the discretion that other independent MLM contractors had.

           *iii.*     *Pruvit's Modern E-Commerce Business Is Unlike Past and Present Direct Sales Companies.*

87. The Direct Sales Exemption and its inclusion in AB 5 was based on the MLM industry's claim that it is needed to ensure the industry can continue to offer people the opportunity to create and run their own businesses. Some MLM businesses do run operations that are predominately based around in-person sales, promoting home parties and sales at community events, like Parent Teacher Association meetings or similar. Some do not allow consumers to buy products via a company website or they use pricing and purchasing policies that give the seller more control. In the primarily face-to-face, in-person sales context, the direct line between a person's effort and a closed sale may still be one that can be drawn and may allow for the kind of independent business operations contemplated by the statute.

88. Pruvit's operations, however, are a stark departure. The way in which it operates its platforms, including requiring Promoters to use Replicated Sites, eliminates for the Promoter nearly all the work associated with operating a business, as compared to MLMs of the past, and of some in the present. At the same time, by removing many of the functions performed by sellers in the past, Promoters with expertise, skills, or a willingness to invest in certain areas are unlikely to realize a material change in their earnings prospects.

89. For example, the use of Replicated Sites means that skills or investment in inventory management or distribution processes are not necessary, nor will they have a material impact on a Promoter's outcome. When customers place orders on the Replicated Sites, Pruvit fulfills them. Unlike some MLMs, both current and historic, as well as in the traditional wholesale context, Promoters do not need to plan to have products on hand or collect bulk orders.

90. Similarly, expertise or support in accounting, finance, economics or pricing will not impact a Promoter's outcome, because Promoters are not able to alter prices at which the products are sold on the Site and must sell them at the rate that Pruvit has determined will cover Pruvit's expenses, regardless of whether the Promoter's compensation is enough to cover the Promoter's

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

expenses. Pruvit calculates, collects, and remits sales taxes, and Promoters do not need nor would benefit from experience in that area. Unlike some MLMs, both current and historic, as well as in the traditional wholesale context, Pruvit does not give a larger discount or increase the percentage basis for a commission if a Promoter orders a larger amount of products for their customers.

91.    Pruvit also pays the Promoter's upline and downline and determines any compensation owed to them, and thus, a Promoter does not negotiate or set anyone else's rates of pay. Pruvit handles the payment interface, and thus Promoters do not need expertise in electronic payments, data security and privacy, credit card processing regulations, or similar.

### 6.    The Terms And Conditions In The Agreement Are Unconscionable, Unfair, And Unlawful.

92.    The Agreement between Pruvit and Promoters is a tool by Pruvit to exert control while maximizing Pruvit's profits. The Agreement is a take-it-or-leave it deal, with no opportunity for negotiation. And many Promoters discover that the arrangement is one in which they will spend extraordinary amounts of time and money promoting the company with little payoff.[35] Indeed, the effect of the Agreement, when considered in tandem with Pruvit's other business practices, grossly restricts Promoters' ability to profit from their work advertising sales, and may cause Promoters to turn attention to recruiting more Promoters into a futile business endeavor.

93.    Indeed, MLMs like Pruvit have been criticized for the fact that few of the sellers manage to profit. At least one study concluded that 99% of MLM participants do not earn money;[36] another found that only 25% earned a profit.[37] Pruvit's numbers are consistent with this low rate of success; Promoters rarely make any money. The median annual income for a Promoter is $10.59— the majority of Promoters do not make enough commission to cover their Promoter Fee.

94.    Those Promoters who *did* receive a commission check did not fare much better. Pruvit's 2022 Income Disclosure Statement presents information on Promoters of various ranks,

---

[35] *See* Abby Vesoulis & Eliana Dockterman, Pandemic Schemes: How Multilevel Marketing Distributors Are Using the Internet—and the Coronavirus—to Grow Their Businesses, TIME, Jul. 9, 2020, https://time.com/5864712/multilevel-marketing-schemes-coronavirus/.
[36] *Id.*
[37] *What is Multilevel Marketing (MLM)?*, AARP FOUNDATION, https://www.aarp.org/aarp-foundation/our-work/income/multilevel-marketing/ (last accessed Oct. 30, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

including the 44.15% percent of the Promoters were in the lowest rank: "unranked." The average amount in commission earned by Promoters in that rank for the whole year was $10.48, but that amount is an average (many earned $0 for the entire year), and do not include Promoters' expenses. As described throughout, Promoters themselves foot the bill for event registration fees, Pruvit-related travel, office supplies, insurance premiums, products purchased for business purposes, marketing materials, and internet and phone bills, inter alia.

95.    Moreover, Pruvit has structured its business operations and Agreements to benefit from the addition of more Promoters, while Promoters lose. Pruvit benefits when tens of thousands are active on social media but incurs no other expense unless the Promoter generates a sale. While Pruvit benefits from an oversaturation of Promoters, the individual Promoters only have more competitors and a harder time setting themselves apart. And nowhere in the Agreement does Pruvit promise to limit the number of Promoters retained in any way.

96.    Given that Promoters must compete with Pruvit and other Promoters for retail sales under such oppressive and onerous terms, it is no surprise that the overwhelming majority never receive commission or struggle to break even. But because Promoters receive commission from the retail sales made by any Promoters they recruit, Pruvit's own income disclosures indicate that those who advance to higher levels through recruiting more Promoters on average earn more money. Thus, Promoters have a financial incentive to advertise the opportunity to work with Pruvit under these unfair, unconscionable, and oppressive terms.  Those new Promoters in turn will pay Pruvit various fees discussed herein, buy merchandise from Pruvit, promote Pruvit on social media, be subject to the same restrictions on selling as those who recruited them, and like those before them, find profiting from selling to be futile and turn to recruiting.

97.    Further, the Agreement contains an unconscionable and unenforceable waiver of the right to bring a class action and representative action. Ex. A § 8.6.[38] With respect to the

---

[38] "8.6 Class Action Waiver
a. The parties expressly intend and agree that:
    i. Class action and representative action procedures are hereby waived and shall not be asserted, nor will they apply, in any court or arbitration; and,
    ii. The parties will only submit their own, individual claims in any court or arbitration and will not seek to represent the interests of any other person.

representative action waiver, it cannot be enforced against Plaintiff to prohibit her from bringing a representative action under California's PAGA statute. The California Supreme Court has held that the "right to bring a PAGA action is unwaivable." *Iskanian v. CLS Transp. L.A., LLC,* 59 Cal. 4th 348, 383 (2014).

98.    With respect to the class waiver, that too is unenforceable. Class action waivers are rarely enforceable against workers asserting wage and hour claims under the California Labor Code, because such waivers make it very difficult for those injured by unlawful conduct to pursue a legal remedy. *See Gentry v. Sup. Ct.*, 42 Cal. 4th 443, 457–63 (2007). Here, Pruvit's class action waiver hampers Plaintiff and Promoters' ability to comprehensively pursue legal remedies for the numerous wage and hour violations detailed herein.

99.    Because Pruvit does not require a minimum time commitment to be a Promoter, Promoters can, and often do, work for Pruvit on a part-time basis or for short lengths of time. As most Promoters lose money working for Pruvit, their employment is likely to be short-lived. When Promoters only work for Pruvit for a few hours, any wage and hour claims they bring against Pruvit will be extremely modest. This means that for many Promoters, bringing an individual action is not financially feasible due to their small potential recovery. A class action is the only viable way for such a Promoter to obtain relief for themselves—by joining their smaller-value claims with others who have been similarly harmed by Pruvit's violations. As such, Pruvit's class action waiver is unconscionable and unenforceable.

## C.    Pruvit's Misclassification of Plaintiff And Promoters in California Was Willful.

100.    Pruvit's decision to misclassify the Promoters as independent contractors was willful and intentional.

---

b. The court or arbitrator is not empowered to consolidate claims of different individuals into one proceeding, to hear any litigation or arbitration as a class action.
c. As a Pruvit Promoter and/or Customer, I agree that I will not assert class or collective action claims against Pruvit in arbitration, court, or otherwise, nor will I join or serve as a member of a class or collective action in arbitration, court or otherwise.
d. As a Promoter and/or Customer, I understand that this means that there will be no right or authority for any dispute to be brought, heard, or arbitrated as a class or collective action by me or Pruvit."

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

101.  ***First,*** Pruvit is registered to do business in California, and employs or has employed personnel in the state, and thus, it is implementing California's labor and employment laws as a matter of regular practice. It is a highly sophisticated, large company owned by another highly sophisticated, large company, whose legal team includes California lawyers, including those at the prestigious law firms that provide it representation in other matters. Both its management and its legal team would be exposed to news about changes in California law with respect to misclassification.

102.  ***Second,*** as detailed above, Pruvit's Agreement, as well as other materials and communications to Promoters, set forth various rules and policies. Pruvit knew and intended for Promoters to conform to these rules and policies and ensured adherence through its own platforms and other instrumentalities.

103.  ***Third,*** Pruvit knows and depends on the Promoters and even the highest levels of the company understand that the Promoters play an essential role in Pruvit's growth and business model. The management team, including the CEO and CFO, not only understand the essential role the Promoters play, but know they are classified as independent contractors, as evidenced by their decision to operate the company as an MLM. Thus, the decision was not a singular decision by a low-level employee, but a conscious and knowing choice endorsed by the highest levels of the company.

104.  ***Fourth,*** Pruvit further knows and understands as an MLM, few workers will make money under a commission structure, and repeatedly states in publicly accessible documents that its Promoters only get paid if they make a sale. Indeed, the commission structure represents a significant cost savings over the payment of hourly wages. Pruvit is aware that it is receiving inexpensive, commission-based work from its Promoters—it intentionally structured the program in that way.

105.  ***Fifth,*** Pruvit knew that its Promoters were not engaged in either type of work protected under the Direct Sales Exemption. It does not use terms like "buy-sell" or "deposit-commission" in its compensation documents or Agreement. It also knows that its Promoters engage primarily in social media marketing on its behalf, and are rarely, if ever, engaging in person sales

or hosting parties in others' homes, particularly during and since the COVD pandemic. And it designs platforms, such as the Pruvit Back Office, marketing materials, and Replicated Sites to facilitate online sales and marketing.

106.  **Sixth,** Pruvit knew the Direct Sales Exemption was enacted years ago, and there was no guarantee that all MLMs could enjoy its protection. Rather, Pruvit has been an MLM since 2015, and its founders involved in MLMs for years prior, thus, should have or did know that the classification of MLM workers has for years been one of the most critical legal and policy issues for the industry.

107.  For example, in 2018, the Oregon Supreme Court determined that an MLM had misclassified its sales personnel as independent contractors. *See ACN Opportunity, LLC v. Employment Department*, 362 Or. 824 (2018). The decision was based in part on the fact that the statute exempted sales "in the home," and the legislative history indicated that this exemption was narrowly tailored to apply to things like Tupperware parties. Notably, the concurrence made clear that the direct sales laws on the books reflect outdated direct selling practices and may not reach many modern MLMs. It is hard to imagine that Pruvit would not have learned of a decision by a state supreme court, particularly given the decision's significance to its industry.

## D.    Pruvit's Misclassification Of Promoters And Unfair Business Practices Harm The Public.

108.  Pruvit's misclassification of its workers and unfair and unconscionable business model threatens the general public nationwide and in California. Because Pruvit has no incentive to stop these practices, a public injunction is necessary to stop these practices.

### 1.    Pruvit Uses Widespread Advertising Practices Directed At The General Public To Recruit New Promoters.

109.  Pruvit has eschewed traditional recruiting practices in lieu of widespread advertising. Because of how Pruvit recruits, nearly everyone in the state of California is likely to be targeted for recruiting and engagement in Pruvit's unfair and unlawful business model.

110.  Rather than market job opportunities to job seekers meeting certain criteria, Pruvit uses its Promoters to sell the Promoter opportunities in the same way they advertise its products.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Pruvit has set up its compensation structure and business model to incentivize Promoters to turn to recruiting, and those Promoters in turn will promote the opportunity to their customers, as well as their family and friends. Thus, the public does not need to be affirmatively seeking out job opportunities; merely buying a routine consumer good or having a friend or family member working as a Promoter may subject them to recruiting messaging, and by extension, could lead them to accept the Agreement and become a Promoter.

111.   Moreover, Pruvit's reliance on its existing Promoter network to advertise the Promoter opportunity is likely to cause the message to reach the general public at large, as its network is enormous. While precise nationwide numbers are not known, in 2022, Pruvit had 25,251 Promoters in the U.S. alone, and in 2025 the company reported that it had 19,000 Promoters globally. Promoters need not respect geographic boundaries when advertising the Promoter opportunity, and thus, any member of the California public who either personally knows a Promoter or follows one on social media, regardless of where the Promoter lives, is likely to receive messages about the Promoter opportunity.

112.   Because of the financial incentives those Promoters receive, members of the public may sometimes repeatedly and consistently receive advertising about the Promoter opportunity over weeks or months at a time, and perhaps from multiple Promoters. Indeed, each newly recruited Promoter presents the risk of an exponential increase of Promoters. Promoters can maintain their status and receive additional compensation based on the sales volume of the downline Promoters that they recruited. The more Promoters recruited into their downline, the more likely it is that they will be able to generate more income.

113.   Because Promoters are incentivized to aggressively recruit new Promoters, and Pruvit considers every customer to be a potential Promoter, California's residents are vulnerable to long-term consequences of Pruvit's rampant misclassification. Notably, Pruvit is not a selective employer; it requires little in the way of experience or other criteria. The overwhelming majority of adults in the state of California are likely qualified for the job, and millions of people in the state may seek out this opportunity. Indeed, it is estimated that one in every thirteen Americans will

participate in an MLM at some point in their lifetimes.[39] This could translate into hundreds of thousands of Californians, if not millions of Californians, who are at risk of being recruited into an illegal and unfair working arrangement.

> **2.    Pruvit's Unfair And Unlawful Conduct Harms the Public, including California, In Other Ways.**

114.   Beyond recruitment, Pruvit's misclassification of their Promoters harms Californians both economically and socially. When Promoters lose money and accumulate credit card debt, they and their families are harmed by the siphoning away of their uncompensated time and lost money on business expenses. This results in them and their families having fewer resources to invest in legitimate businesses and less time to spend working for real, guaranteed wages. And instead of the opportunity being a "side hustle" that allows them to pay off mortgages or student loan debt, cover costs of childcare, or otherwise advance financially, the loss of money from being a Promoter could cause them more economic hardship.

115.   This public harm intensifies during periods of crisis. It is well-documented that MLMs, including Pruvit, profited from greater recruitment of participants during the COVID-19 pandemic.[40] Pruvit expects the same profit from future crises, such as financial recessions, because it recruits new Promoters under the guise that they will be able to grow their own business with a sustainable income. Pruvit siphons potential workers away from legitimate opportunities with the promises of building a personal business, when these individuals are under Pruvit's control with none of the benefits of proper classification, and hurting California families.

116.   Pruvit's practices also harm competitors, such as legitimate companies in the health and wellness space, who must and do pay wages and benefits at prevailing market rates to market and sell their products. By misclassifying its workers, and paying them only for certain sales, Pruvit incurs lower expenses, giving them a competitive advantage over other market participants.

---

[39] Marguerite DeLiema, et al., *AARP Study of Multilevel Marketing: Profiling Participants and their Experiences in Direct Sales*, AARP Foundation (2018), at 13, https://www.aarp.org/content/dam/aarp/aarp_foundation/2018/pdf/AARP%20Foundation%20MLM%20Research%20Study%20Report%2010.8.18.pdf.

[40] *See* Abby Vesoulis & Eliana Dockterman, *Pandemic Schemes: How Multilevel Marketing Distributors Are Using the Internet—and the Coronavirus—to Grow Their Businesses*, TIME, Jul. 9, 2020, https://time.com/5864712/multilevel-marketing-schemes-coronavirus/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

117.    The California Legislature specifically considered harms like these in passing AB 5. The legislature recognized "harm to misclassified workers who lose significant workplace protections, the unfairness to employers who must compete with companies that misclassify, and the loss to the state of needed revenue from companies that use misclassification to avoid obligations such as payment of payroll taxes, payment of premiums for workers' compensation, Social Security, unemployment, and disability insurance" and that "the misclassification of workers as independent contractors has been a significant factor in the erosion of the middle class and the rise in income inequality." Pruvit's continued misclassification of California workers will exacerbate all these harms to the California public.

118.    Absent an injunction protecting the public from the negative impacts of Defendants' illegal activities, including by and through their officers and/or entities in their control, the California public remains at risk from Pruvit's deceptive recruitment strategies and the economic and social harms created by their unlawful practices.

**E.    Plaintiff's Experiences As A Pruvit Promoter.**

119.    Plaintiff Jennifer Carrera acted as a Pruvit Promoter from June 2020 to June 2024.

120.    When she signed up in 2020, Plaintiff indicated that she accepted the Policies and Procedures. Upon completion of the application, Pruvit required Plaintiff to be responsible for adhering to the Pruver Agreement. Plaintiff was not engaged in an independently established trade, occupation, or business as a sales professional and had limited sales experience.

121.    Around the time she signed up, Plaintiff filled out her profile on the Pruvit Back Office. This included providing her social media information to Pruvit, which they could access to monitor her compliance with the Agreement.

122.    Pruvit also provided Plaintiff with a personalized Pruvit website URL for her Replicated Website and "Referrer Code," and instructed her to provide it to prospective customers.

123.    At no time was Plaintiff instructed to focus on in-person sales. As a general matter, Plaintiff understood from communications, directives, and practices of Pruvit that sales efforts, were to be predominately online.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

124.   In the course of her tenure as a Promoter on behalf of Pruvit, Plaintiff predominately marketed Pruvit products on various social media platforms, including Facebook, Instagram, and TikTok. To carry out this marketing work, Plaintiff performed the following tasks:

a)  Purchased, studied, and tested Pruvit products, including consuming the supplements on a regular basis;

b)  Planned and coordinated online groups for diet "challenges," or short periods to inspire people to focus on using Pruvit products in place of meals, through social media messaging platforms;

c)  Posted on her social media pages about Pruvit products, including brainstorming content, drafting, and editing the text, and taking photographs and video recordings for each post, as well as incorporating Pruvit-approved messaging for many, if not all, of her posts;

d)  Developed and followed up with Pruvit sales leads;

e)  Regularly monitored her social media pages and Pruvit "Pulse Pro" app to engage further with customers, and replied to any direct messages from interested potential customers;

f)  Evaluated customer's needs, lifestyle, and goals to put together customized Pruvit product bundles for her customers;

g)  Participated in efforts to recruit, onboard, train, and/or mentor new Promoters;

h)  Attending meetings with upline and downline Promoters;

i)  Attended numerous online trainings run by Pruvit on sales, marketing, and business tactics;

j)  Tracked and reported her progress and sales of Pruvit products; and

k)  Attended an in-person Promoter training in Louisville, KY, which included several full days of Pruvit programming.

125.   Plaintiff performed all these tasks regularly throughout her tenure, at her peak involvement spending about forty to fifty hours a week, often working for periods of more than

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

three (3) to five (5) hours. Plaintiff performed these activities throughout the day, nearly every day, often in short increments adding up to six (6) to eight (8) hours a day.

126. Plaintiff rarely, if ever, sold to customers in-person, and her advertising and messaging was done online.

127. Plaintiff, like all Promoters, worked under Pruvit's pervasive control and direction. Selling Pruvit products—the main responsibility of Promoters—is work that is precisely in line with Pruvit's usual course of business.

128. Plaintiff paid the following fees and out-of-pocket, work-related expenses throughout her tenure:

   a) An enrollment fee and purchased a starter kit for approximately $360;

   b) The required annual $49 Promoter Fee each year until June 2024;

   c) $99 annually for access to the Pruvit "Pulse Pro" app;

   d) Approximately $6,000 in Pruvit-branded merchandise for social media activity and connection;

   e) Approximately $1,200 on non-Pruvit-branded sales aids, promotional items, and sales technology;

   f) Approximately $1,700 for online trainings provided by Pruvit;

   g) Approximately $670 for travel, lodging, and expenses for an in-person Promoter training in Louisville, KY; and

   h) A monthly bill of approximately $110 for her cell phone and internet access.

129. The commissions Plaintiff earned had to be transferred to an "eWallet," a separate Pruvit-owned website that charged Plaintiff fees each time she transferred her pay from the Pruvit website to her eWallet, from her eWallet to her bank account, and for leaving money in the eWallet for too long. Pruvit charged Plaintiff approximately $140 in fees associated with the eWallet.

130. During Plaintiff's tenure, Pruvit determined the prices at which all products could be sold online. She did not have the authority nor ability to sell or advertise online prices for Pruvit products at a different price. All sales by any customer that Plaintiff referred to Pruvit were made through Pruvit-controlled platforms.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

131.    During Plaintiff's tenure, including during the last four years, Plaintiff was not compensated for her time doing any of the forementioned activities, nor paid any overtime. Plaintiff did not renew her Promoter Fee in June 2024, which automatically terminated employment, effective immediately. Plaintiff did not receive a final paycheck for unpaid wages within 72 hours of her resignation.

132.    During Plaintiff's tenure, Plaintiff spent approximately $320 per month out of pocket. Plaintiff was not compensated for out-of-pocket expenses.

133.    No paystub was provided that identified hours worked, nor were any employment taxes withheld at any time. For some of Plaintiff's sales, Pruvit did not pay her commission because the customer returned the products.

## V.    CLASS ALLEGATIONS

134.    Plaintiff incorporates and realleges the above paragraphs.

135.    Plaintiff brings this action on her own behalf, as well as on behalf of each and all other persons similarly situated and thus seeks class certification under California Code of Civil Procedure § 382.

136.    Plaintiff also brings this action individually and on behalf of all other individuals similarly situated pursuant to 29 U.S.C. § 216(b).  Plaintiff and the similarly situated individuals work(ed) as Promoters for Pruvit.

137.    All claims alleged herein arise under California and federal law for which Plaintiff seeks relief authorized by California and federal law.

138.    Plaintiff's proposed **Nationwide Collective** consists of and is defined as follows:

> All current and former Pruvit Promoters who worked during the applicable statutes of limitations through the date a class is certified.

139.    Plaintiff has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b) and her consent form is attached hereto. As this case proceeds, it is likely that additional individuals will file consent forms and join as "opt-in" plaintiffs.

1
2
3

140.    Plaintiff's proposed **California Subclass** shall consist of all Pruvit Promoters who resided in the State of California or who performed marketing or sales activities in California during the applicable statute of limitations through the date a class is certified.

4
5

141.    Plaintiff also proposes the **Above-Standard Minimum Wage Subclass**, which shall consist of:

6
7
8
9

> All current and former Pruvit Promoters classified as independent contractors who resided in California cities or counties with a minimum wage rate greater than the California minimum wage during the applicable statutes of limitations through the date a class is certified. This subclass includes, but is not limited to, residents of Los Angeles (City and County), San Francisco, San Diego, Oakland, and San Jose.

10
11
12
13

142.    Members of the Nationwide Class and Collective (as related to federal claims) will hereinafter be referred to as "Collective Members" or "Nationwide Collective" Plaintiff reserves the right to redefine the Collective, Class, and Subclasses and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

14
15
16
17

143.    ***Ascertainable and numerous.*** The Class is ascertainable and numerous such that joinder is impractical. The membership of the entire class is unknown to Plaintiff at this time. However, the class will likely consist of thousands of members, the precise number which is within the knowledge of and can be readily ascertained through Pruvit's records.

18
19
20
21
22
23
24

144.    ***Community of Interest.*** There is a well-defined community of interest amongst Class Members. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because the Class is both numerous and its membership is geographically widespread across California. A class action will achieve economies of time, effort and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class. In addition:

25
26
27

145.    ***Predominating Common Questions.*** There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

a) Whether Pruvit misclassified its Promoters as independent contractors when in fact they were Pruvit employees;

b) Whether Pruvit failed to pay Plaintiff and Class Members the legally mandated minimum wage for all hours worked;

c) Whether Pruvit failed to pay Plaintiff and Class Members overtime wages;

d) Whether Pruvit failed to timely pay wages due to Plaintiff and Class Members during their employment;

e) Whether any misclassification by Pruvit was voluntary and knowing;

f) Whether Pruvit's Califorina Promoters' duties fall within the Direct Sales Exemption to AB5;

g) Whether Pruvit controlled the manner and means of the Promoters' work;

h) Whether Pruvit failed to reimburse Promoters' business expenses;

i) Whether Pruvit failed to maintain accurate time records for its Promoters;

j) Whether Pruvit failed to provide complete and accurate wage statements to its Promoters;

k) Whether Pruvit failed to pay Promoters their wages due at termination;

l) Whether Pruvit engaged in unfair practices;

m) Whether the Promoter Agreement is unenforceable and invalid;

n) Whether Pruvit was unjustly enriched; and

o) Whether Pruvit should be enjoined from continuing the practices described herein.

146. ***Typicality.*** Plaintiff's claims are typical of the claims of Class Members because Plaintiff, like all members of the Class, worked as a Promoter for Pruvit in California, was required to adhere to Pruvit's policies, and was paid on a commission basis. Furthermore, like all members of the Class, Plaintiff sustained damages from Pruvit's wrongful conduct. Accordingly, Plaintiff has no interests antagonistic to the interests of any other member of the Class.

147. ***Adequacy.*** Plaintiff will fully and adequately assert and protect the interests of the Class and has retained counsel who are experienced in prosecuting class actions. Plaintiff acknowledges that she has an obligation to make known to the Court any relationship, conflicts or

1    differences with any Class Member. Plaintiff's attorneys, the proposed class counsel, are versed in

2    the rules governing class action discovery, certification, and settlement. Accordingly, Plaintiff is an

3    adequate representative and will fairly and adequately protect the interests of the Class.

4    **VI.    FACTS RELATING TO PLAINTIFF AS A PRIVATE ATTORNEY GENERAL**

5        148.   At all times set forth herein, PAGA was applicable to Plaintiff's employment by

6    Defendants.

7        149.   At all times set forth herein, PAGA provides that, notwithstanding any other provision

8    of law, any provision of law under the California Labor Code that provides for a civil penalty,

9    including unpaid wages and premium wages, to be assessed and collected by the California Labor

10   & Workforce Development Agency ("LWDA") for violations of the California Labor Code may, as

11   an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of

12   the aggrieved employee and other current or former employees pursuant to procedures set forth in

13   California Labor Code § 2699.3.

14       150.   Pursuant to PAGA, a civil action may be brought by an "aggrieved employee," who

15   is any person that was employed by the alleged violator and against whom one or more of the alleged

16   violations was committed.

17       151.   Plaintiff was employed by Defendants and the alleged violations were committed

18   against her and she is, therefore, an aggrieved employee. Likewise, the other Promoters who worked

19   within the relevant time are "aggrieved employees" as defined by California Labor Code § 2699(c)

20   in that they are current or former employees of Defendants and one of more of the alleged violations

21   were committed against them.

22       152.   Pursuant to California Labor Code §§ 2699.3 and 2699.5, an aggrieved employee,

23   including Plaintiff, may pursue a civil action arising under PAGA after the following requirements

24   have been met:

25           a)   The aggrieved employee shall give written notice (hereinafter "Employee's

26               Notice") to the LWDA and the employer of the specific provisions of the Labor

27               Code alleged to have been violated, including the facts and theories to support the

28               alleged violations.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

b)  The LWDA shall provide notice (hereinafter "LWDA Notice") to the employer and the aggrieved employee that it does not intend to investigate the alleged violation within sixty (60) calendar days of the postmark date of the Employee's Notice. Upon receipt of the LWDA Notice, or if the LWDA Notice is not provided within sixty-five (65) calendar days of the Employee's Notice, the aggrieved employee may commence a civil action pursuant to California Labor Code § 2699 to recover civil penalties in addition to any other penalties to which the employee may be entitled.

153.  Plaintiff has satisfied these statutory requirements. On February 3, 2025, Plaintiff provided notice by electronic submission to the LWDA and by certified mail to all Defendants regarding the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations, pursuant to § 2699.3. A true and correct copy of that notice letter is attached as **Exhibit B**. The LWDA has not expressly stated that it will intervene or investigate, or otherwise responded regarding Plaintiff's asserted claims against Defendants.

## VII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Failure to Pay Minimum Wages and Liquidated Damages)**
**Cal. Lab. Code §§ 1182.12, 1194, 1197, 1197.1, 1198, 558.1, 1194.2, 558(a); IWC Wage Order 4-2001**
*On behalf of the California Subclass*

*Against Pruvit Ventures Inc.; Brian Underwood; Christopher Harding; Terry Lacore; Jenifer Grace; Blake Mallen; and Does 1–50, inclusive*

154.  Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

155.  At all relevant times, California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 have provided that the minimum wage for employees fixed by the Industrial Welfare Commission is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful. California law provides employees in California must be paid for all hours worked, up to forty (40) per week or eight (8) per day, at a regular time rate no less

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

than the mandated minimum wage. Compensable work time is defined by the applicable wage order as "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, sec. 11070(2)(G) (defining "Hours Worked").

156.    As alleged herein, during the relevant time period, Pruvit maintained and still maintains a policy of requiring employees to work off-the-clock, without compensation. Pruvit only compensates Promoters, including Plaintiff, based on specific sales placed through the Pruvit website, and does not pay wages for other hours worked. These hours include time spent doing the following, inter alia:

        a)  in training;

        b)  making and responding to social media posts;

        c)  purchasing inventory from Pruvit;

        d)  communicating with other Promoters about policies, practices, and sales instructions and guidance;

        e)  communicating with customers after their purchases were made to handle routine customer service; and

        f)  handling other responsibilities as needed.

Plaintiff and the California Subclass Members performed these activities throughout the day, nearly every day, often in short increments adding up to six to eight hours a day.

157.    Pruvit provided no way for Plaintiff and the California Subclass Members to log time spent and submit to Pruvit.

158.    Pruvit's failure to pay Plaintiff and the California Subclass Members for work, and failure to pay overtime wages owed, also resulted in failures to pay Plaintiff and the California Subclass Members the minimum wage required, in violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, 1198. In addition, Pruvit's failure to pay for hours worked is a violation of various municipal and county codes across the state, including, but not limited to City of L.A. Cal. Code art. 7-7.5; County of Los Angeles Code § 8.100.040, *et seq*., San Francisco Cal. Code 12R.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

159.   California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for minimum wage violations. *See* Cal. Lab. Code § 558.1. Defendants PRUVIT VENTURES INC.; BRIAN UNDERWOOD; CHRISTOPHER HARDING; TERRY LACORE; JENIFER GRACE; BLAKE MALLEN; and DOES 1–50, inclusive, failed to pay Plaintiff and other aggrieved employees the minimum wage and all Defendants are liable for causing this violation under Labor Code § 558.1.

160.   As such, pursuant to California Labor Code § 1194.2, Plaintiff and the California Subclass Members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Pursuant to California Labor Code § 558(a), Plaintiff and the California Subclass Members are also entitled to recover unpaid wages and statutory damages in the amount of $50 for any initial violation per employee for each pay period and $100 for each subsequent violation per employee for each pay period and interest pursuant to California Labor Code § 218.6.

### SECOND CAUSE OF ACTION

**(Failure to Pay Overtime Wages and Liquidated Damages)**
**Cal. Lab. Code §§ 510, 558.1, 1194.2, 558(a); IWC Wage Order 4-2001**
***On behalf of the California Subclass***

***Against Pruvit Ventures Inc.; Brian Underwood; Christopher Harding; Terry Lacore; Jenifer Grace; Blake Mallen; and Does 1–50, inclusive***

161.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

162.   California Labor Code § 510 and Wage Order No. 4-2001 require employers to pay no less than one and one-half times the regular rate of pay of the employee for hours worked in excess of eight (8) hours in one workday, for hours worked in excess of forty (40) hours in one workweek, and for the first eight (8) hours worked on the seventh day of work in any one workweek, and to pay no less than twice the regular rate of pay of the employee for hours worked in excess of twelve (12) hours in one workday and for any work in excess of eight (8) hours on any seventh day of a workweek. During the relevant time period, Plaintiff and other aggrieved employees worked over 8 hours in a day and/or 40 hours in a week without overtime compensation because Pruvit

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

failed to pay them for their work duties, as described above.  This was, in turn, due to Pruvit's unlawful misclassification of Promoters as independent contractors rather than as employees. On occasions when Plaintiff and other aggrieved employees had already worked eight hours in one day (performing all their work off-the-clock), Pruvit failed to pay them any overtime compensation due. Therefore, Plaintiff and the other aggrieved employees were entitled to receive overtime compensation from Pruvit that Pruvit failed to pay, violating Labor Code § 510 and Wage Order No. 4-2001. In addition, Pruvit's failure to pay overtime is a violation of various municipal and county codes across the state, including, but not limited to City of L.A. Cal. Code art. 7-7.5; County of Los Angeles Code § 8.100.040, *et seq.*, San Francisco Cal. Code 12R.

163.   California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for overtime wage violations. *See* Cal. Lab. Code § 558.1. Defendants PRUVIT VENTURES INC.; ; BRIAN UNDERWOOD; CHRISTOPHER HARDING; TERRY LACORE; JENIFER GRACE; BLAKE MALLEN; and DOES 1–50, inclusive, failed to pay Plaintiff and other aggrieved employees overtime wages and all Defendants are liable for causing this violation under Labor Code § 558.1.

164.   As such, pursuant to California Labor Code § 1194.2, Plaintiff and the California Subclass Members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Pursuant to California Labor Code § 558(a), Plaintiff and the California Subclass Members are also entitled to recover unpaid wages and statutory damages in the amount of $50 for any initial violation per employee for each pay period and $100 for each subsequent violation per employee for each pay period and interest pursuant to California Labor Code § 218.6.

### THIRD CAUSE OF ACTION

**(Failure to Provide Rest Periods or Rest Break Premium Wages)**
**Cal. Lab. Code §§ 226.7, 558.1, IWC Wage Order 4-2001**
***On behalf of the California Subclass***

***Against Pruvit Ventures Inc.; Brian Underwood; Christopher Harding; Terry Lacore; Jenifer Grace; Blake Mallen; And Does 1–50, inclusive***

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

165.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

166.   California Labor Code § 226.7 and IWC Wage Order 4-2001 require an employer to authorize or permit an employee to take a rest period of ten net minutes for every four hours worked, or major fraction thereof, and such rest periods must be in the middle of the four-hour period insofar as practicable. If the employer fails to provide any required rest periods or fails to provide a fully compliant rest break for a net ten minutes wherein the employee is fully relieved of all duties and all employer control, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday the employer did not provide a legally required and/or fully compliant rest period.

167.   Pruvit failed to provide Plaintiff and the Class all required and/or fully compliant rest periods, or compensation in lieu thereof. Pruvit employed policies and procedures that ensured Plaintiff and the Class would not receive all legally required rest periods as Pruvit improperly classified Plaintiff and the Class as independent contractors rather than as employees and did not authorize nor permit all required rest periods in strict accordance with the timing requirements of all applicable Wage Orders. Pruvit similarly employed policies and procedures that rendered rest periods non-compliant with the requirements of California law by, inter alia, failing to relieve Plaintiff and the Class of all duties and all employer control. Pruvit further employed policies and procedures ensuring Plaintiff and the Class never received a rest period premium during employment.

168.   California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for rest period violations. *See* Cal. Lab. Code § 558.1. Defendants PRUVIT VENTURES INC.; BRIAN UNDERWOOD; CHRISTOPHER HARDING; TERRY LACORE; JENIFER GRACE; BLAKE MALLEN; and DOES 1–50, inclusive, failed to provide Plaintiff and the Class all rest periods or compensation in lieu thereof and all Defendants are liable for causing this violation under Labor Code § 558.1.

169.    As a result, under Labor Code § 226.7, Plaintiff and the Class are entitled to one additional hour's pay for each day a rest break was missed, late or interrupted, all in an amount according to proof.

**FOURTH CAUSE OF ACTION**

**(Failure to Provide Meal Periods or Meal Premium Wages)**
**Cal. Lab. Code §§ 226.7, 512(a), 1198, 558.1; IWC Wage Order 4-2001**
***On behalf of the California Subclass***

***Against Pruvit Ventures Inc.; Brian Underwood; Christopher Harding; Terry Lacore; Jenifer Grace; Debra Aaron; Blake Mallen; And Does 1–50, inclusive***

170.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

171.    Under California Labor Code §§ 226.7, 512(a), 1198, and IWC Wage Order 4-2001, Pruvit was required to provide Plaintiff and the California Subclass Members with one thirty-minute meal break free from all duties for all shifts longer than five (5) hours, and a second thirty-minute meal break free from all duties for all shifts longer than 10 hours and a third thirty-minute meal break free from all duties for all shifts longer than 15 hours. Employers covered by the Wage Orders have an obligation to both (1) relieve their employees for at least one meal period for shifts over five hours, and (2) to record having done so. If the employer fails to properly record a valid meal period, it is presumed no meal period was provided. California Labor Code § 226.7 also requires an employer to pay mandated premiums of an extra hour of wages to any employees who have not been provided with a timely meal or rest break.

172.    As alleged herein, Plaintiff and the Class regularly worked periods of more than five (5), ten and fifteen hours in a workday without being provided requisite mandatory timely, thirty-minute, duty-free meal periods. Pruvit also failed to pay Plaintiff and the Class an additional hour of wages at her regular rate for each workday a meal period and/or a legally compliant meal period was not provided.

173.    Pruvit failed to provide Plaintiff or the other aggrieved employees with an opportunity to take timely, uninterrupted meal periods of the requisite length, free from employer control. Pruvit also failed to compensate Plaintiff and the other aggrieved employees properly for the non-

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

compliant meal periods including, inter alia, missed, short, late, and/or interrupted meal periods. Pruvit also failed to pay premium wages for the many meals that Plaintiff and the aggrieved employees were deprived of. Indeed, Pruvit did not provide any meal breaks or premium compensation for missed breaks to Plaintiff or other aggrieved employees, since Pruvit improperly classified its Promoters as independent contractors who were not entitled to meal breaks.

174.   California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for meal period violations. *See* Cal. Lab. Code § 558.1. Defendants PRUVIT VENTURES INC.; BRIAN UNDERWOOD; CHRISTOPHER HARDING; TERRY LACORE; JENIFER GRACE; DEBRA AARON; BLAKE MALLEN; and DOES 1–50, inclusive, failed to provide Plaintiff and other aggrieved employees all meal periods or compensation in lieu thereof and all Defendants are liable for causing this violation under Labor Code § 558.1.

175.   As a result, under Labor Code § 226.7, Plaintiff and the Class are entitled to one additional hour's pay for each day a meal period was missed, late or interrupted, all in an amount according to proof.

## FIFTH CAUSE OF ACTION
### (Failure to Timely Pay Wages During Employment)
### Cal. Lab. Code §§ 204, 210(a), 218.6
### *On behalf of the California Subclass*
### *Against Pruvit Ventures Inc.; and Does 1–50, inclusive*

176.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

177.   At all relevant times herein set forth, California Labor Code § 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

178.   California Labor Code § 204 also requires that all wages earned for labor more than the normal work period shall be paid no later than the payday for the next regular payroll period.

179.   During the relevant period, Pruvit failed to pay Plaintiff and the Class, as well as all other aggrieved employees, all wages due to them, including minimum wages, overtime wages, and meal and rest period premium wages, within any time period specified by California Labor Code § 204. Moreover, Pruvit failed to pay Plaintiff or other aggrieved employees earned commissions in a timely and complete fashion.

180.   As such, pursuant to California Labor Code § 210(a), Plaintiff and the California Subclass Members are entitled to recover stator damages in the amount of $100 for any initial violation per failure to pay each employee and $200 for each subsequent, or willful or intentional violation for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld, and interest pursuant to Labor Code § 218.6.

## SIXTH CAUSE OF ACTION

**(Failure to Pay All Earned and Unpaid Wages Upon Separation of Employment)**
**Cal. Lab. Code §§ 201-203, 558.1**
***On behalf of the California Subclass***

***Against Pruvit Ventures Inc.; Brian Underwood; Christopher Harding; Terry Lacore; Jenifer Grace; Blake Mallen, and Does 1–50, inclusive***

181.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

182.   At all times relevant herein set forth, Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves their employment, their wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of their intention to quit, in which case the employee is entitled to their wages at the time of quitting.

183.   California Labor Code § 203 provides that, at the time of termination of employment, the employer must pay an employee all wages due and owing within the time frames set forth in California Labor Code §§ 201, *et seq*. If an employer willfully refuses to pay, without abatement or

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

reduction, in accordance with California Labor Code §§ 201 and 202, any wages of an employee who is discharged or who quits, the employee's wages shall continue as a penalty for up to thirty (30) days from the due date, until paid or until an action to recover those wages is commenced.

184. As alleged herein, following Plaintiff's final day of employment, Pruvit willfully failed to pay Plaintiff and the Class all wages due and owing within the deadlines set forth in California Labor Code §§ 201, *et seq.*, including unpaid overtime wages and wages for missed/noncompliant meal and rest periods.

185. California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for failure to pay all wages at the time of termination. *See* Cal. Lab. Code § 558.1. Defendants PRUVIT VENTURES INC.; BRIAN UNDERWOOD; CHRISTOPHER HARDING; TERRY LACORE; JENIFER GRACE; BLAKE MALLEN; and DOES 1–50, inclusive, failed to pay all wages at the time of termination of Plaintiff and the California Subclass Members and all Defendants are liable for causing this violation under Labor Code § 558.1.

186. Pursuant to California Labor Code § 203, Plaintiff and the Class are entitled to recover waiting time penalties of up to thirty (30) days' pay, plus attorneys' fees and costs, in an amount according to proof.

### SEVENTH CAUSE OF ACTION
**(Failure to Keep Requisite Payroll Records)**
**Cal. Lab. Code §§ 1174(d), 1174.5**
***On behalf of the California Subclass***
***Against Pruvit Ventures Inc.; and Does 1–50, inclusive***

187. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

188. California Labor Code § 1174(d) requires an employer to keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case, shall be kept on file for not less than two years.

189.   At all times herein set forth, California Labor Code § 1174.5 has imposed a civil penalty of $500 per aggrieved employee for each willful failure "to maintain . . . accurate and complete records required by subdivision (d) of Section 1174[.]"

190.   Pruvit has intentionally and willfully failed to keep accurate and complete payroll records showing the hours worked daily and the wages paid to Plaintiff. For example, any records kept by Pruvit did not include the hours worked off-the-clock, the premium wages owed, and for missed and non-compliant meal and rest breaks.

191.   Plaintiff has been injured by Pruvit's intentional and willful violation of California Labor Code § 1174(d) because they were denied both their legal right and protected interest, in having available, accurate and complete payroll records pursuant to § 1174(d).

## EIGHTH CAUSE OF ACTION
### (Failure to Provide Timely and Accurate Wage Statements)
### Cal. Lab. Code §§ 226(a), 1198, 226.3, 558.1, 226(e)
### *On behalf of the California Subclass*

***Against Pruvit Ventures Inc.; Brian Underwood; Christopher Harding; Terry Lacore; Jenifer Grace; Blake Mallen; and Does 1–50, inclusive***

192.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

193.   At all relevant times herein set forth, California Labor Code § 226(a) provides that, at the time of each payment of wages, the employer must provide each employee with an itemized statement showing gross wages earned, total hours worked, all deductions taken, net wages earned, the inclusive dates for which the employee is being paid, the employee's name and last four digits of their social security number, the name and address of the legal entity that is the employer, and all applicable hourly rates in effect during the pay period and all hours worked at each rate.

194.   California Labor Code § 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.

195.    At all times herein set forth, California Labor Code § 226.3 has imposed a civil penalty in addition to any other penalty provided by law of two hundred fifty dollars ($250) per aggrieved employee for the first violation of California Labor Code § 226(a), and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation.

196.    As alleged herein, Pruvit knowingly and willfully failed to provide Plaintiff and the Class with proper, itemized wage statements. Wage statements provided to Plaintiff and the Class did not show total/actual hours worked and all applicable hourly rates in effect during the pay period and all hours worked at each rate. The wage statements provided to Plaintiff and the Class failed to reflect all time spent in training, making and responding to social media posts, making business expenditures by stocking their own Pruvit inventory, and communicating with other Pruvit Promoters about policies, practices, and sales instructions and guidance. Pruvit's refusal to properly record this time, and to include it in its itemized wage statements, or to properly pay its employees for this time was willful and intentional. As a result of these violations, Plaintiff and the Class suffered injury because they were not paid for all hours worked.

197.    California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for wage statement violations. *See* Cal. Lab. Code § 558.1. Defendants PRUVIT VENTURES INC.; BRIAN UNDERWOOD; CHRISTOPHER HARDING; TERRY LACORE; JENIFER GRACE; BLAKE MALLEN; and DOES 1–50, inclusive, failed to provide Plaintiff and the Class accurate wage statements and all Defendants are liable for causing this violation under § 558.1.

198.    Pursuant to California Labor Code § 226(e), Plaintiff and the Class are entitled to a penalty in the amount of fifty dollars ($50) for the initial pay period in which a violation occurred, and a penalty of one-hundred dollars ($100) for each violation in a subsequent pay period, up to an

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

aggregate penalty of four-thousand dollars ($4,000), as well as costs of suit and attorneys' fees, all in an amount according to proof.

## NINTH CAUSE OF ACTION

### (Failure to Reimburse Business Expenses)
### Cal. Lab. Code §§ 450, 2802, 558.1; IWC Wage Order 4-2001
### *On behalf of the California Subclass*

### *Against Pruvit Ventures Inc.; Brian Underwood; Christopher Harding; Terry Lacore; Jenifer Grace; Blake Mallen; And Does 1–50, inclusive*

199.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

200.    At all times herein set forth, California Labor Code § 2802 has provided and provides that an employer must reimburse employees for all necessary expenditures and losses incurred by the employee in the performance of their job. The purpose of California Labor Code § 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). The applicable wage order, IWC Wage Order 4-2001, paragraph 9(B) provides that: "When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft." Pruvit's conduct, in misclassifying their Promoters as independent contractors and failing to reimburse them for expenses Promoters paid that should have been borne by their employer, constitutes a violation of California Labor Code §§ 450 and 2802.

201.    Pruvit violates California Labor Code § 2802 by having failed, and failing, to reimburse Plaintiff and the Class for their business-related expenses. Pruvit charged Plaintiff and the Class numerous fees, including an annual "Promoter Fee" of $49, $99 annually for access to the Pruvit "Pulse Pro" app, varying fees for trainings, and varying fees to withdraw commissions, which Pruvit did not reimburse. Similarly, Pruvit did not reimburse Promoters for expenses they incurred associated with work-related travel, sales aids, and business technology. And during the relevant

period, Pruvit required that Plaintiff and the Class use their own personal cellular phones, and/or cellular phone data to carry out Pruvit's business operations, but failed to reimburse them for the full costs of their work-related cellular phone. For example, Plaintiff and the Class were required to use a personal cellular phone to make social media posts, use the Back Office, and communicate with customers and their upline. Plaintiff and the Class also incurred expenses associated with maintaining a home internet connection. Pruvit did not reimburse Promoters for these expenses.

202.   Pruvit's company-wide policy and/or practice of passing on their operating costs to Plaintiff and the Class violates California Labor Code § 2802. At all times described herein, Pruvit has acted willfully, and deliberately with oppression, fraud and malice to unlawfully deprive their employees of the employees' own personal resources in furtherance of Pruvit's profits.

203.   California Labor Code § 558.1 states that any employer or person acting on behalf of an employer who causes a violation is liable, among other things, for failure to reimburse business expenses. *See* Cal. Lab. Code § 558.1. Defendants PRUVIT VENTURES INC.; BRIAN UNDERWOOD; CHRISTOPHER HARDING; TERRY LACORE; JENIFER GRACE; BLAKE MALLEN; and DOES 1–50, inclusive, failed to reimburse business expenses to Plaintiff and the Class and all Defendants are liable for causing this violation under § 558.1.

204.   As a result of Pruvit's failure to reimburse Plaintiff and the Class for all business-related expenses, pursuant to California Labor Code § 2802, Plaintiff and the Class are entitled to recover unreimbursed business expenses, plus attorneys' fees and costs, in an amount according to proof.

## TENTH CAUSE OF ACTION

### (Unfair Competition)
### Bus. & Prof. Code § 17200 et seq.
#### *Against Pruvit Ventures Inc.; and Does 1–50, inclusive*
#### *On behalf of the California Subclass*

205.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

206.   From a date unknown to Plaintiff and continuing to the present, Pruvit has and continues to engage in business acts or practices that constitute unfair competition as defined in the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Unfair Competition Law, Business and Professions Code § 17200 *et seq.*, in that such business acts and practices are unlawful and unfair within the meaning of that statute.

### *"Unlawful" Prong*

207.    Pruvit has violated § 17200's prohibition on unlawful conduct through the following violations:

a)    Failing to pay minimum wages, as set forth in Paragraphs 154-60;

b)    Failing to pay overtime wages, as set forth in Paragraphs 161-64;

c)    Failing to provide rest periods and/or pay associated premium wages, as set forth in Paragraphs 165-69;

d)    Failing to provide meal periods and/or pay associated premium wages, as set forth in Paragraphs 170-75;

e)    Failing to timely pay wages during employment, as set forth in Paragraphs 176-80;

f)    Failing to timely pay all earned and unpaid wages upon separation of employment, as set forth in Paragraphs 181-86;

g)    Failing to keep requisite payroll records, as set forth in Paragraphs 187-91;

h)    Failing to provide timely and accurate wage statements, as set forth in Paragraphs 192-98; and

i)    Failing to reimburse business expenses, as set forth in Paragraphs 199-204.

208.    The forgoing unlawful conduct of Pruvit alleged herein constitutes unfair competition within the meaning of California Business and Professions Code §§ 17200 *et seq*.

### *"Unfair" Prong*

209.    Pruvit has violated § 17200's prohibition on unfair conduct by engaging in each of the forgoing unlawful acts.

210.    Furthermore, as set forth in Paragraphs 87–91, Pruvit has violated § 17200's prohibition on unfair conduct by unfairly and unconscionably structuring its Agreement and business activities in a way that does not create meaningful opportunities for Promoters earn a fair wage and/or commission for their work. Pruvit used its superior bargaining power, superior market

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

power, and take-it-or-leave-it Agreement to prevent Promoters from exercising discretion and accessing tools and resources needed to market the products effectively and competitively to generate profits. And Pruvit further undermined Promoters' ability to earn compensation by engaging in activities in competition with the Promoters, by for example, maintaining the exclusive right to disseminate online advertising to any customer sales leads generated by the Promoters and selling products via Amazon.com. By denying Promoters meaningful opportunities to earn fair commission, Pruvit also unfairly incentivized Promoters to divert time and attention away from marketing the sale of products to retail customers to marketing the opportunity to become a Promoter to unsuspecting members of the California public.

211.  In addition, Pruvit unfairly used the Promoter Agreement, which purports to classify Promoters as independent contractors and governs the terms of their relationship with Defendant, including the compensation plan. The Promoter Agreement is invalid and unenforceable on various grounds, including lacking consideration, unconscionable, illegality, and contrary to law and public policy.

212.  So long as Defendants continue these unfair practices, the California public remains at risk for being recruited into Pruvit and similarly harmed.

213.  Pruvit's unfair acts were in contravention of public policy. California public policy encourages the proper classification of workers to ensure that workers are fairly compensated and provided the full benefits and protections of employment, competitors are operating in a fair and honest marketplace, and the state is not deprived of tax revenue.

214.  Pruvit's unfair acts were immoral, unethical, oppressive, unscrupulous, and substantially injurious to the Class and general public. Pruvit knowingly and willfully classified the Promoters as independent contractors. And it knowingly and willfully structured an unfair and unconscionable Agreement that did not provide for meaningful opportunities to earn compensation, while engaging in business activities that would further frustrate Promoters' efforts to earn compensation.

215.  The impact on the Class and general public is not outweighed by any countervailing benefits. To the extent any benefits inured to Plaintiff, the Class, and the general public, those

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

benefits are outweighed by the impact of Defendants' unfair acts. Promoters, including Plaintiff, incurred substantial costs in working as Promoters, and were not paid appropriately and fairly for their time and efforts. They could have chosen other opportunities or invested that time and money into other legitimate and fairly paying endeavors.

### *UCL Injury and Remedies*

216.  As a result of Pruvit's unfair competition as alleged herein, Plaintiff and the Class have suffered injury in fact and lost money or property, as described in more detail above. Pursuant to California Business and Professions Code §§ 17200, *et seq.*, Plaintiff and the Class are entitled to restitution of all wages and other monies rightfully belonging to them that Pruvit failed to pay and wrongfully retained by means of its unlawful and unfair business practices, and and/or all other equitable remedies that may be available.

217.  Remedies at law are inadequate. Plaintiff and class members conferred substantial benefits on Defendant by (1) performing various services, including marketing, sales, recruitment, brand promotion, customer service, and other services;   and, to perform those services, (2) purchasing goods from Defendants for demonstration and promotional purposes and (3) paying Defendants for access to platforms, tools, and other necessary instrumentalities of the work. The performance of these services from Defendants and the related purchases and payments to Defendants generated significant revenue and profits for Defendants.

218.  Plaintiff and the California Subclass are entitled to restitution in the amount as may be determined by this Court, but may be based on (1) the fair market value of the services the Class rendered to Defendants and the full or premium value received by Defendants from the Class for any goods and services purchased in the course of their performance of services for Defendants, less any compensation or commissions paid; (2) the disgorgement of profits Defendant earned as a result of the labor and purchases by the Class; (3) the fair market value of other benefits that flowed to Defendants as a result of the labor and purchases by the Class (such as increased retail sales, increased visibility on social media); (4) the fair market value of any cost savings that Defendants retained as a result of the labor and purchases by the Class (such as reduced expenditures on marketing and distribution; or (5) any other just and reasonable method as the Court may determine.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

219.  To prevent Pruvit from continuing to prey on the California public through their misclassification of their Promoters, the use of unenforceable and invalid contracts, other unfair practices, and recruitment of new Promoters under these false pretenses, Plaintiff and the Class also seek a public injunction against Defendants enjoining Pruvit, and any and all persons acting in concert with them, from engaging in each of the California Labor Code violations set forth herein and from recruiting new Promoters or authorizing others to recruit new Promoters, under a misclassified status, including making representations about that status and the commission-based compensation structure.

/ / /

/ / /

/ / /

## ELEVENTH CAUSE OF ACTION

### (Violation of Cal. Lab. Code §§ 2698-2699.8)
### *On behalf of the California Subclass*

*Against Pruvit Ventures Inc.; Brian Underwood; Christopher Harding; Terry Lacore; Jenifer Grace; Blake Mallen; And Does 1–50, inclusive*

220.  Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

221.  PAGA establishes that, notwithstanding any other provision of law, any provision of the California Labor Code which provides for a civil penalty to be assessed and collected by the LWDA, or any of its departments, divisions, commissions, boards, agencies or employees for a violation of the California Labor Code, may be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself, and other current or former employees.

222.  Whenever the LWDA, or any of its departments, divisions, commissions, boards, agencies, or employees has discretion to assess a civil penalty, a court in a civil action is authorized to exercise the same discretion, subject to the same limitations and conditions, to assess a civil penalty.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

223. Plaintiff and the other Distributor employees are "aggrieved employees" as defined by California Labor Code § 2699(c) in that they are all current or former employees of Defendants, and one or more of the alleged violations were committed against them.

224. Defendants' conduct, as alleged herein, violates numerous sections of the California Labor Code, including, but not limited to, the following:

a) Failing to pay minimum wages, as set forth in Paragraphs 154-60;

b) Failing to pay overtime wages, as set forth in Paragraphs 161-64;

c) Failing to provide rest periods and/or pay associated premium wages, as set forth in Paragraphs 165-69;

d) Failing to provide meal periods and/or pay associated premium wages, as set forth in Paragraphs 170-75;

e) Failing to timely pay wages during employment, as set forth in Paragraphs 176-80;

f) Failing to timely pay all earned and unpaid wages upon separation of employment, as set forth in Paragraphs181-86;

g) Failing to keep requisite payroll records, as set forth in Paragraphs 187-91;

h) Failing to provide timely and accurate wage statements, as set forth in Paragraphs192-98; and

i) Failing to reimburse business expenses, as set forth in Paragraphs 199-204; and

j) Willfully misclassifying Promoters as independent contractors, in violation of California Labor Code §§ 226.8 and 2775.

225. Pursuant to PAGA, and in particular California Labor Code §§ 2699(a), 2699.3, and 2699.5, Plaintiff, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for Plaintiff, all other aggrieved employees, and the State of California against Defendants, in fixed amounts for each aggrieved employee for every pay period in which there was a violation, per § 2699(f), in addition to other remedies, for violations of Labor Code sections set forth herein.

226. Pursuant to California Labor Code § 2699(i), civil penalties recovered by aggrieved employees shall be distributed as follows: seventy-five percent (75%) to the LWDA for the

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

enforcement of labor laws and education of employers and employees about their rights and responsibilities and twenty-five (25%) to the aggrieved employees.

227.  Further, and as authorized by the California Labor Code § 2699(g), Plaintiff seeks recovery of her attorneys' fees and costs.

## TWELFTH CAUSE OF ACTION

### (Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*)
### *On behalf of the Nationwide Collective*
### *Against Pruvit Ventures Inc. and Brian Underwood*

228.  Plaintiff re-alleges and incorporates all preceding allegations as though fully set forth herein.

229.  At all relevant times, Defendants have been an "enterprise" within the meaning of 29 U.S.C. § 203(r), engaged in interstate commerce or in the production of goods for commerce, with annual gross sales of not less than $500,000.

230.  At all relevant times, Plaintiff and the Nationwide Collective members have been "employees" within the meaning of 29 U.S.C. § 203(e), and Defendants have been their "employer" within the meaning of 29 U.S.C. § 203(d).

231.  Defendants have misclassified Plaintiff and the Nationwide Collective members as independent contractors rather than employees. Under the FLSA's economic reality test, Plaintiff and Nationwide Collective members are employees because they are economically dependent on Defendant and are not, as a matter of economic reality, in business for themselves.

232.  As a result of this misclassification, Defendants have failed to pay Plaintiff and Nationwide Collective members the federal minimum wage for all hours worked, in violation of 29 U.S.C. § 206.

233.  As a result of this misclassification, Defendants have failed to pay Plaintiff and the Nationwide Collective members overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of forty hours per workweek, in violation of 29 U.S.C. § 207.

234.  Defendants' violations of the FLSA were willful. Defendants knew or showed reckless disregard for whether its conduct violated the FLSA.

235.   Plaintiff brings this claim as a collective action pursuant to 29 U.S.C. § 2169(b) on behalf of herself and all similarly situated current and former Promoters nationwide who were classified as independent contractors and denied minimum wage and overtime compensation at any time within three years preceding the filing of this action through the date of final judgment.

236.   Plaintiff and Nationwide Collective members are similarly situated in that they were subject to Defendants' common policy, pattern, and practice of misclassifying Promoters as independent contractors and failing to pay them minimum wage and overtime compensation as required by the FLSA.

237.   By reason of Defendants' violations of the FLSA, Plaintiff and Nationwide Collective members have suffered damages in amounts to be determined at trials.

238.   Pursuant to 29 U.S.C. § 216(b), Plaintiff and Nationwide Collective members are entitled to recover their unpaid minimum wages and overtime compensation, plus an equal amount as liquidated damages, plus reasonable attorneys' fees and costs.

239.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

### THIRTEENTH CAUSE OF ACTION

**(Quasi-Contract Claim for Restitution (Unjust Enrichment))**

*On behalf of the California Subclass and the Nationwide Collective*

*Against Pruvit Ventures Inc.; Brian Underwood; Christopher Harding; Terry Lacore; Jenifer Grace; Blake Mallen; And Does 1–50, inclusive*

240.   Plaintiff brings this cause of action, *in the alternative* to her FLSA and state statutory claims and/or where the remedies at law provided under those statutes are inadequate, to proceed only in the event those claims do not provide full recovery, on behalf of herself and the Nationwide Class during the applicable limitations period.

241.   The Promoter Agreement purports to classify Promoters as independent contractors and governs the terms of their relationship with Defendants, including the compensation plan. The Promoter Agreement is invalid and unenforceable on various grounds, including lacking consideration, unconscionable, illegality, and contrary to law and public policy. Accordingly, there

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   is no valid or enforceable contract governing compensation for the services Plaintiff and Class

2   Members rendered.

3         242.   Restitution may be awarded in lieu of contract damages when the parties had an

4   express contract, but is unenforceable or ineffective.

5         243.   Plaintiff and Class Members conferred substantial benefits on Defendants by (1)

6   performing various services, including marketing, sales, recruitment, brand promotion, customer

7   service, and other services;  and, to perform those services, (2) purchasing goods from Defendants

8   for demonstration and promotional purposes and (3) paying Defendants for access to platforms,

9   tools, and other necessary instrumentalities of the work. The performance of these services from

10  Defendants and the related purchases and payments to Defendants generated significant revenue

11  and profits for Defendants.

12        244.   Defendants had knowledge of these benefits and knowingly accepted and retained

13  them.

14        245.   Defendants have been unjustly enriched by receiving the value of Plaintiff's and class

15  members' labor without paying lawful compensation in return.

16        246.   Under these circumstances, it would be inequitable and unjust for Defendants to retain

17  the benefits conferred by Plaintiff and class members without paying fair value for those services.

18        247.   California law recognizes quasi-contract claims for restitution based on unjust

19  enrichment.

20        248.   Plaintiff and class members are entitled to restitution in the amount that Defendants

21  were unjustly enriched, as may be determined by this Court, but may be based on (1) the fair market

22  value of the services the Class rendered to Defendants and the full or premium value received by

23  Defendants from the Class for any goods and services purchased in the course of their performance

24  of services for Defendants, less any compensation or commissions paid; (2) the disgorgement of

25  profits Defendants earned as a result of the labor and purchases by the Class; (3) the fair market

26  value of other benefits that flowed to Defendants as a result of the labor and purchases by the Class

27  (such as increased retail sales, increased visibility on social media); (4) the fair market value of any

28  cost savings that Defendants retained as a result of the labor and purchases by the Class (such as

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

reduced expenditures on marketing and distribution; or (5) any other just and reasonable method as the Court may determine.

## VIII.  **PRAYER FOR RELIEF**

WHEREFORE Plaintiff and the Class pray for judgment and relief as follows:

(1)  An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative, and that Plaintiff's counsel be appointed Class Counsel;

(2)  Statutory penalties and compensatory damages as authorized under the California Labor Code;

(3)  Civil penalties pursuant to California's Private Attorneys General Act;

(4)  Restitution and all other equitable remedies pursuant to California's Unfair Competition Law;

(5)  Public injunctive relief, pursuant to California's Unfair Competition Law, prohibiting Pruvit, its officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, whether acting directly or indirectly, in connection with the management, hiring, or coordination of Promoters, or the advertising, promotion, or recruitment of new Promoters, from:

a.  Engaging in the California Labor Code violations as alleged herein, including classifying Promoters as non-employees or independent contractors;

b.  Recruiting new Promoters or authorizing others to recruit new Promoters, under a misclassified status, including making representations about that status and the commission-based compensation structure.

(6)  Punitive damages against the individual officer, director or managing agent Defendants pursuant to Cal. Civil Code § 3294;

(7)  Reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b);the California Labor Code, including §§ 226(e), 2699(g), and Code of Civil Procedure § 1021.5; and any other applicable statute

(8)  Costs of this suit per Labor Code § 2699(g);

(9)  Pre- and post-judgment interest pursuant to Labor Code § 218.6;

(10)  Declaration that Defendant misclassified Plaintiff, Nationwide Collective, and Class members as independent contractors and that they are employees under the FLSA and state law;

(11)  Award of unpaid minimum wages owed to Plaintiff, Nationwide Collective, and Class members

(12)  Award of unpaid overtime compensation owed to Plaintiff, Nationwide Collective, and Class members;

(13)  Award of liquidated damages in an amount equal to the unpaid wages pursuant to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

29 U.S.C. 216(b);

(14)    Authorization to send notice to all similarly situated individuals pursuant to 29 U.S.C. 216(b);

(15)    In the alternative to damages and/or where remedies at law are otherwise inadequate, restitution;

(16)    Such other and further relief as the Court may deem just and proper.

## IX.    **DEMAND FOR TRIAL BY JURY**

249.    Plaintiff and the Class hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

DATED: February 9, 2026                    **CLARKSON LAW FIRM, P.C.**

By: */s/ Kristen G. Simplicio*
Kristen G. Simplicio
Glenn A. Danas
Maxim Gorbunov

*Attorneys for Plaintiff*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**CONSENT TO JOIN COLLECTIVE ACTION**

**Pursuant to Fair Labor Standards Act**
**29 U.S.C. § 216(b)**

***Carrera v. Pruvit Ventures, Inc., et al.***

Name: Jennifer Carrera

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent and agree to pursue my claims for unpaid overtime amounts that I allege are due to me for work I performed from June 2020 to June 2024 for which I allege Pruvit Ventures, Inc. is liable.

3. I understand that this lawsuit is brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, to recover alleged unpaid minimum wages for all hours worked; unpaid overtime compensation and other benefits, including liquidated damages and such other relief as the Court deems just and proper. I hereby consent, agree, and opt in to become a Plaintiff herein and be bound by any judgment by the Court or any settlement of this action.

4. I choose to be represented by class and collective action counsel Clarkson Law Firm, P.C. for all purposes in this action and to take any steps necessary to pursue my claims, including filing new lawsuits.

02 / 09 / 2026
_____
Date

_____
Jennifer Carrera